**82**

YOUNG & LAZZARINI
KENRICK YOUNG (CSB #236032)
NICHOLAS LAZZARINI (CSB #259247)
770 L Street, Suite 950
Sacramento, CA 95814
916.929.6865 (tel)
916.471.0377 (fax)
info@kenrickyoung.com

Attorneys for Plaintiff Jennifer Buchanan, an individual

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 17-26418-C-7 |
| | ) |
| JAMES BROOKS BUCHANAN, | ) Chapter 7 |
| | ) |
|     Debtor. | ) Adv. Proc. No.: |
| _____ | ) |
| JENNIFER BUCHANAN, an individual, | ) **COMPLAINT (1) TO DETERMINE** |
| | ) **NON-DISCHARGEABILITY OF A** |
| | ) **DEBT PURSUANT TO 11 U.S.C.** |
|     Plaintiff, | ) **§§ 523(a)(2) & (a)(15) and (2) FOR** |
| v. | ) **DENIAL OF DISCHARGE** |
| | ) **PURSUANT TO 11 U.S.C. §** |
| JAMES BROOKS BUCHANAN, an individual, | ) **727(a)(3) & (a)(5)** |
| | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

ADVERSARY COMPLAINT

- 1 -

Plaintiff JENNIFER BUCHANAN ("Plaintiff" or "Ms. Buchanan") hereby alleges as follows:

## PARTIES

1.     Plaintiff JENNIFER BUCHANAN is an individual who resides in Isle of Palms, South Carolina.

2.     Defendant JAMES BROOKS BUCHANAN ("Defendant," "Debtor," or "Mr. Buchanan") is an individual who resides in Roseville, California and is the debtor in the above-captioned bankruptcy case.

## JURISDICTION AND VENUE

3.     This is an adversary proceeding to determine: (1) denial of discharge pursuant to Federal Rules of Bankruptcy Procedure 4004 & 7001(4) and 11 U.S.C. §§ 727(a)(3) & 727(a)(5); and, (2) the nondischargeability of a debt pursuant to Federal Rules of Bankruptcy Procedure 4007 and 7001(6) and 11 U.S.C. §§ 523(a)(2) & (a)(15).

4.     This adversary proceeding arises in and relates to Mr. Buchanan's Chapter 7 case filed in this district.

5.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (J).

7.     Venue is proper pursuant to 28 U.S.C. § 1409(a).

//

//

//

//

//

//

ADVERSARY COMPLAINT

- 2 -

**FACTS**

8.    Mr. Buchanan, as a former Bank of America executive with experience in compliance and regulatory services, had extensive experience with both foreclosure and bankruptcy regulations.  Using that knowledge, Mr. Buchanan engaged in fraudulent negotiations with Ms. Buchanan during their divorce proceedings to take on distressed assets in exchange for being paid out credits in the form of cash equivalent assets totaling $835,580.00  Despite those cash assets and nearly $1.6 million in income between January 2014 and September 2017, Mr. Buchanan let two separate properties fall into foreclosure before filing bankruptcy leaving Ms. Buchanan with deficiency liability and legal fees totaling over $500,000.  Mr. Buchanan should not be entitled to bankruptcy relief from his actions.

9.    Plaintiff and Defendant (collectively, the "Parties") were married on October 20, 1990 in the state of North Carolina.

10.    On or about November 21, 2011, Plaintiff and Defendant separated and have lived separate and apart continuously since that date.

11.    On May 9, 2013 (the "Mediation Date"), the Parties participated in a mediated settlement conference to determine divisions of marital assets and liabilities (the "Mediation").  As part of the Mediation, the Parties, their counsel, and the mediator engaged in a series of trading assets and credits for liabilities to achieve an equitable division of debts and property.  An "Assets & Liabilities Chart" was generated in order to track the separation of assets and debts and provide equal division.  A true and correct copy of the Assets & Liabilities Chart is annexed hereto as Exhibit 1.

12.    As of the Mediation Date, the Parties jointly owned three (3) real property assets: (1) the marital residence commonly known as 2310 Westfield Road, Charlotte, North Carolina ("Westfield"); (2) a beach rental condominium commonly known as unit 11-B Seagrove Lane, Isle of Palms, South Carolina ("Seagrove"); and, (3) a beach rental property commonly known as 1 Beach Club Villa, Isle of Palms,

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814
916.929.6865

South Carolina ("Beach Club") (collectively, the "Properties"). All of the Properties were encumbered with liens in varying number and amount.

13.     As of the Mediation Date, Westfield was appraised at $615,000.00 with a mortgage of $440,764.00, leaving approximately $174,236.00 in equity. *See* Exhibit 1, ln. 1.

14.     As of the Mediation Date, Seagrove's estimated value was $750,000.00 with a mortgage of $624,417.91 and a home equity line of credit of $58,747.49, leaving approximately $66,825.00 in equity. *See* Exhibit 1, ln. 2.[1]

15.     As of the Mediation Date, Beach Club's estimated value was $950,000.00 with a mortgage of $1,460,525, leaving a negative equity of approximately $510,525.00.

16.     The Parties also had several vehicles, multiple bank accounts, and multiple investment and stock accounts.

17.     The Parties agreed Ms. Buchanan would receive Westfield as her sole and separate property, including assuming all monthly costs and responsibility for the mortgage.

18.     The Parties agreed to retain Seagrove as joint tenants to be rented and/or marketed for sale. The parties each agreed to remain 50% liable for the monthly carrying costs on Seagrove and to share in rental or sale proceeds should any be realized.

19.     Mr. Buchanan eagerly volunteered to take on Beach Club, including assumption of all monthly costs and responsibility for the mortgage, despite the fact the property was over half a million dollars under water.

20.     Because Mr. Buchanan took on the additional debts and liabilities associated with Beach Club, he was awarded substantial cash assets as offsetting credits. The cash assets included, among other items: (1) 100% of the RSU 2014

---

[1] In addition to rounding, line-item 2 of Exhibit 1 appears to contain a typographical error listing the equity value of Seagrove at $68,825.00 rather than $66,825.00.

ADVERSARY COMPLAINT

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814
916.929.6865

year-end employee stock bonus[2] valued at $193,920.00; (2) 100% of the RSU 2015 year-end employee stock bonus valued at $120,996.00; (3) 100% of the Bank of America ("BOFA") qualified pension cash balance plan valued at $156,742.53; and, (4) 100% of the BOFA non-qualified restoration plan valued at $40,913.14.

21.     Ultimately, Mr. Buchanan received allocations of cash-equivalent liquid assets and accounts in credits totaling approximately $443,525.00 in exchange for taking on the liabilities associated with Beach Club.

22.     Beyond but including the cash assets received as credits, Mr. Buchanan received total cash equivalent assets of $835,580.00 in the final divorce award, comprised of: (1) Co-invest fund - $67,000.00; (2) RSU 2014 - $193,920.00; (3) RSU 2015 - $120,996.00; (4) Merrill Lynch Edge *1S65 - $443.00; (5) Fidelity Brokerage *4460 - $576; (6) US Trust IRA Rollover - $220,118.00; (7) BOFA Qualified Pension Cash Balance Plan *9201 - $156,743.00; (8) BOFA Non-Qualified Pension Cash Balance Plan *9200 - $40,913.00; and, (9) 2011 Tax Refund - $34,871.00.

23.     The Parties entered into a Memorandum of Understanding regarding the property division and other aspects of the separation on May 9, 2013 (the "Memorandum").  A true and correct copy of the Memorandum is annexed hereto as Exhibit 2.

24.     Marital dissolution proceedings were commenced in or about December 2013 in the District Court of Mecklenburg County, North Carolina.

25.     On December 12, 2013, the Parties entered into a Separation, Property Settlement, Support of Westin, and Alimony Agreement incorporating the provisions of the Memorandum and setting out additional provisions regarding alimony and medical insurance for the Parties' child (the "Separation Agreement").  A true and

---

[2] For informational purposes, the RSU was a financial instrument operating similar to a stock option, allowing the beneficiary to purchase shares at a designated strike price below market value for later resale, but, unlike common stock, it was restricted in access regardless of market value.

ADVERSARY COMPLAINT

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814
916.929.6865

correct copy of the Separation Agreement is annexed hereto as Exhibit 3.

26.    Dissolution of the marriage was granted on January 9, 2014.  A true and correct copy of the Divorce Judgment is annexed hereto as Exhibit 4.

27.    As part of the Separation Agreement, and as agreed to at Mediation, Ms. Buchanan agreed to convey to Mr. Buchanan all of her right, title and interest in Beach Club and signed a quit claim deed on December 12, 2013.  In exchange, also as agreed to at Mediation, Mr. Buchanan agreed to "indemnif[y] and hold[] [Ms. Buchanan] harmless from all such liability" associated with Beach Club including, but not limited to, the mortgage, home owner association dues, property taxes, insurance premiums, maintenance, and utilities. *See* Exhibit 3, p. 9.  Mr. Buchanan also agreed to provide notice to Ms. Buchanan in the event he was unable to make a monthly mortgage payment by the due date. *See* Exhibit 3, p. 10.

28.    Pursuant to the Separation Agreement, the Seagrove property remained jointly owned by the Parties, with each to contribute 50% of the mortgage and other expenses while the property operated as a rental until it could be sold with agreement of the Parties. *See* Exhibit 3, pp. 6-9.

29.    The Parties had limited contact between entry of the divorce order in January 2014 and August 2015.

30.    On or about September 1, 2015, Defendant sent an email to Ms. Buchanan stating he was having financial difficulties and would no longer be able to pay the mortgages for Beach Club and Seagrove nor make his 50% contributions for the expenses of Seagrove (the "September Email").  Defendant gave Ms. Buchanan the option to waive her alimony payments in exchange for him making mortgage payments on Seagrove and Beach Club, but Ms. Buchanan declined.

31.    In September 2016, the Parties were served a Notice of Foreclosure by the primary lender, BOFA, as to Seagrove.  The foreclosure remains pending but stayed due to Mr. Buchanan's bankruptcy filing.

//

ADVERSARY COMPLAINT

- 6 -

32.     As a result of the Seagrove foreclosure, Ms. Buchanan was forced to move to the Seagrove property to establish residence and attempted a loan modification.

33.     Ms. Buchanan incurred storage and moving expenses of $11,100.45 in having to relocate to Seagrove as a result of Mr. Buchanan's failure or refusal to pay the mortgage and property expenses.

34.     On October 4, 2016, BOFA commenced foreclosure on Beach Club (the "BOFA Foreclosure").  Ms. Buchanan hired counsel to defend herself in the BOFA Foreclosure in an attempt to avoid, or at least mitigate, her deficiency exposure following foreclosure sale of Beach Club.

35.     Despite his obligations under the indemnification agreement, Defendant has not paid any of Ms. Buchanan's costs associated with the BOFA Foreclosure.

36.     Plaintiff is informed and believes, and on that basis alleges, Mr. Buchanan stopped paying the mortgage for Beach Club in January 2016.

37.     Plaintiff is informed and believes, and on that basis alleges, Mr. Buchanan continued paying the HOA fees for Beach Club between January 2016 and August 2016 in order to continue renting out the property.

38.     Plaintiff is informed and believes, and on that basis alleges, Mr. Buchanan collected rents from leasing Beach Club between January 2016 and August 2016.

39.     Plaintiff is informed and believes, and on that basis alleges, despite assuming all obligations for Beach Club and agreeing to indemnify Ms. Buchanan for any liabilities incurred relating to Beach Club, Defendant had no intention to insulate her from any foreclosure liability concerning Beach Club.

40.     At all times, Mr. Buchanan was aware any default of the Beach Club mortgage would likely result in a deficiency judgment against both Ms. Buchanan and himself.

//

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814
916.929.6865

41. According to Debtor's Official Form 107 - Statement of Financial Affairs for Individuals Filing for Bankruptcy (the "SOFA"), Defendant's income for the calendar year 2015 was $432,019.00. Exhibit 5, p. 2. Also in 2015, Debtor took an IRA Distribution in the amount of $20,040.00. *Id.* A true and correct copy of Debtor's SOFA is annexed hereto as Exhibit 5.

42. According to his SOFA, Defendant's income for calendar year 2016 was $432,991.00. *See* Exhibit 5, p. 2.

43. According to his SOFA, Defendant's income for the period of January 1, 2017 to his bankruptcy petition date of September 27, 2017 was $299,136.50. *See* Exhibit 5, p. 2. On his Official Form 106I – Schedule I: Your Income ("Schedule I"), Debtor lists his present gross income as $32,266.96 per month with $20,274.96 as his take-home income. *See* Exhibit 6, pp. 1-2. A true and correct copy of Debtor's Schedule I is annexed hereto as Exhibit 6.

44. In his bankruptcy petition, Mr. Buchanan claims he did not make any gifts to any person or charity with a total value greater than $600 between September 27, 2015 and September 27, 2017. *See* Exhibit 5, p. 4.

45. Mr. Buchanan also claims he did not suffer any losses due to theft, fire, disaster, or gambling for the year prior to his bankruptcy. *See* Exhibit 5, p. 5.

46. As of his petition date, Mr. Buchanan claimed his only retirement asset was a Traditional IRA account totaling $15,881.42. Exhibit 7, p. 4. A true and correct copy of Debtor's Official Form 106A/B – Schedule A/B: Property is annexed hereto as Exhibit 7.

47. In January 2017, Ms. Buchanan filed an answer to the BOFA Foreclosure as well as a cross-complaint against BOFA and Mr. Buchanan. In her cross-complaint, Ms. Buchanan alleged fraud against both BOFA and Mr. Buchanan, as well as other causes of action against each. In particular, Ms. Buchanan alleged Defendant used Beach Club to shield his financial activities from creditors, including Ms. Buchanan.

ADVERSARY COMPLAINT

- 8 -

48.     As of the bankruptcy filing date of September 27, 2017, Defendant owes to Ms. Buchanan an amount to be proven at trial but not less than $884,762.28 plus costs and attorneys' fees incurred in this action:

| | | | |
|---|---|---|---|
| i. | Moving Costs After Seagrove Foreclosure | | $11,100.45 |
| ii. | Beach Club deficiency – contingent claim indemnity | | |
| | (Loan Balance as of 08/01/2016 $1,406,763.16 plus | | |
| | interest at 3.45% annual percentage rate) | (est.) | $400-600,000 |
| iii. | Costs and fees incurred as of 9/27/2017 | | |
| | in BOFA Foreclosure Litigation | | $28,136.83 |
| iv. | Forensic Accounting Fee for BOFA Foreclosure | | $2,000.00 |
| v. | Cash equivalent assets fraudulently obtained in | | |
| | Separation Agreement | | $443,525.00 |
| vi. | Costs | | $TBD |
| vii. | Attorneys' Fees | | $TBD |

## FIRST CAUSE OF ACTION

### (Excluding the Debt From Discharge Pursuant to 11 U.S.C. § 523(a)(15))

49.     Plaintiff realleges and incorporates by reference paragraphs 1 through 48, inclusive, as though fully set forth herein.

50.     The Memorandum, the Separation Agreement, and the Divorce Judgment were issued in the course of a divorce proceeding.

51.     Ms. Buchanan, Debtor's former spouse, was a party to the Memorandum, the Separation Agreement, and the Divorce Judgment.

52.     The Memorandum, the Separation Agreement, and the Divorce Judgment (collectively, the "Divorce Orders") were made in connection with a divorce decree.

//

//

ADVERSARY COMPLAINT

- 9 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814
916.929.6865

53.     As a result of Defendant's failure to pay his 50% share of the mortgage and property expenses of Seagrove, Ms. Buchanan was forced to move to Seagrove in order to establish residency and attempt a loan modification rather than allow a foreclosure.

54.     Ms. Buchanan has incurred storage and moving expenses of $11,100.45 as a result of Defendant's failure to meet his obligations in the Divorce Orders.

55.     As to Beach Club:

    i.    On October 4, 2016, BOFA commenced foreclosure proceedings against Beach Club, Mr. Buchannan, and Ms. Buchanan.

    ii.    Pursuant to the Divorce Orders, Mr. Buchanan must indemnify Ms. Buchanan for all liabilities incurred in connection with Beach Club.

    iii.    Based on the valuation of Beach Club as of the time of the foreclosure filing, BOFA is seeking a deficiency judgment against Mr. Buchanan and Ms. Buchanan, jointly and severely, in an amount to be determined upon foreclosure but approximately $400,000-$600,000.

    iv.    As of September 27, 2017, Ms. Buchanan has incurred attorneys' fees and costs in an amount not less than $28,136.83 litigating against BOFA as part of the BOFA Foreclosure.

    v.    As of September 27, 2017, Ms. Buchanan has incurred forensic accounting fees of $2,000.00 in connection with the BOFA Foreclosure litigation.

56.     Because these amounts are owed to Debtor's former spouse, Ms. Buchanan, in connection with a separation agreement and divorce decree, an amount to be determined at trial but not less than $441,237.28 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

57.     Plaintiff is entitled to attorneys' fees and costs incurred in this action pursuant to Cal. Fam. Code §2030, *et seq.*

ADVERSARY COMPLAINT

- 10 -

## SECOND CAUSE OF ACTION

**(Excluding the Debt From Discharge Pursuant to 11 U.S.C. § 523(a)(2))**

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 57, inclusive, as though fully set forth herein.

59. On April 6, 2017, as part of the BOFA Foreclosure litigation and prior to Debtor's bankruptcy filing, Plaintiff filed a state court action for fraud against Mr. Buchanan in the Court of Common Pleas, State of South Carolina, County of Charleston, *Bank of America, N.A. v. James B. Buchanan, et al.*, Case No. CA # 2016-CP-10-4936.

60. During the Mediation, Defendant eagerly requested he take ownership of Beach Club despite the fact that Beach Club had a negative equity position of more than $500,000.00 with little prospect of appreciation in the near-term. As of the Debtor's petition date, Beach Club remains under water with respect to the mortgage.

61. As part of his request for Beach Club, Defendant agreed to assume all liabilities associated with the property, including the mortgage and all monthly costs.

62. As part of his request for Beach Club, Defendant agreed to indemnify Ms. Buchanan for all liabilities incurred in connection with the Property following transfer of ownership.

63. In exchange for taking on the Beach Club property and attendant liabilities, Mr. Buchanan requested credits in the form of cash assets – or assets that could readily be reduced to cash – from Ms. Buchanan to offset his taking on of liabilities from Beach Club including, but not limited to an estimated $314,916.00 in 2014-2015 RSU stocks as well as qualified and non-qualified pension cash outs and other investment and retirement accounts.

64. In total, Defendant received cash equivalent credits in the amount of $443,525.00 from the marital estate by taking ownership of the Beach Club property and its liabilities.

ADVERSARY COMPLAINT

- 11 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814
916.929.6865

65.     Plaintiff is informed and believes, and on that basis alleges, Defendant volunteered to take on the Beach Club liabilities in order to obtain additional cash assets in the divorce proceedings, but with no intent to actually pay the liabilities owed on Beach Club.

66.     In addition to the $443,525.00 in cash equivalent assets obtained during the divorce proceedings, Mr. Buchanan had gross earnings of $1,641,146.50 between January 1, 2015 and September 27, 2017. *See* Exhibit 5, p. 2.

67.     Debtor's SOFA states he has not suffered any theft, catastrophic loss, or gambling loss during the relevant time period. *See* Exhibit 5, p. 5.

68.     Debtor's SOFA states he has not given any substantial gifts to any other person during the relevant time period. *See* Exhibit 5, p. 4.

69.     Despite $443,525.00 in cash equivalent assets from the divorce proceedings and at least $1,641,146.50 in gross income since January 2014, Defendant did not make monthly mortgage payments on Beach Club since at least October 2015.

70.     Defendant has not made any effort to indemnity Ms. Buchanan for losses associated with Beach Club and the BOFA Foreclosure.

71.     Plaintiff is informed and believes, and on that basis alleges, Defendant intentionally misrepresented to Ms. Buchanan at Mediation that he intended to pay for the mortgage and related expenses for Beach Club and that he would indemnify Ms. Buchanan for any losses she incurred in connection with Beach Club if he were allowed to take possession of the property.

72.     Plaintiff is informed and believes, and on that basis alleges, Defendant made the above intentional misrepresentations to Ms. Buchanan with the intent she would rely on his statements and exchange her rights to cash equivalent assets for his assumption of the debts associated with Beach Club, as well as his agreement to indemnify Plaintiff for any losses connected to the property.

ADVERSARY COMPLAINT

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814
916.929.6865

73. Ms. Buchanan relied on Defendant's false representations in her decision to enter into the Mediation Agreement and Separation Agreement, as well as her decisions to convey her interest in Beach Club to Defendant and give up rights to cash equivalent assets as part of the property division.

74. As a result of Defendant's fraudulent misrepresentations and omissions, Ms. Buchanan has been injured in an amount to be determined based on the deficiency owed after the Beach Club foreclosure but estimated to be $400,000-$600,000, $443,525.00 in fraudulently obtained assets from the divorce proceedings, plus at least $28,136.83 in costs and attorneys' fees and $2,000.00 in forensic accounting fees incurred defending the BOFA Foreclosure as of September 27, 2017.

75. Mr. Buchanan's debt to Plaintiff in an amount to be determined at trial but not less than $873,661.83 should be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

**THIRD CAUSE OF ACTION**

**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3))**

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 75, inclusive, as though fully set forth herein.

77. Between January 2014 and the Petition Date, Defendant received at least $1,641,146.50 in gross income according to his SOFA.

78. Through the Divorce Orders, Defendant received a total of $835,580.00 in cash equivalent assets between December 2013 and early 2014.

79. In September 2015, Defendant informed Plaintiff he could no longer afford to make mortgage or expense payments on Seagrove in addition to his alimony payments despite no significant change in income according to his SOFA.

80. Defendant has not produced receipts, records, papers, or other documents to account for the dissipation of assets and income given he was not paying the mortgage on Beach Club or Seagrove since approximately January 2016,

ADVERSARY COMPLAINT

- 13 -

allowing both properties to go into foreclosure.

81.     Plaintiff is informed and believes, and on that basis alleges, Defendant has lived with a girlfriend since approximately 2014 and shares living expenses with her, which is not reflected in Defendant's bankruptcy schedules.  As such, Defendant's actual monthly expenses are lower than stated in his Schedule J.

82.     Plaintiff is informed and believes, and on that basis alleges, Defendant has concealed, destroyed, falsified, or failed to keep or preserve documents, records and papers from which the Defendant's financial condition or business transactions might be ascertained.

83.     As such, Defendant should be denied discharge.

## FOURTH CAUSE OF ACTION

### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5))

84.     Plaintiff realleges and incorporates by reference paragraphs 1 through 83, inclusive, as though fully set forth herein.

85.     Defendant has failed to explain satisfactorily any loss of assets or deficiency of assets to meet Defendant's liabilities.

86.     In his Official Form 106J – Schedule J: Your Expenses ("Schedule J"), Debtor lists average monthly expenses of $20,587.14.  A true and correct copy of Schedule J is annexed hereto as Exhibit 8.

87.     Debtor's Schedule J expenses include $1,270.41 in real estate taxes, $998.00 in HOA fees, and $1,000.00 in Past Due Expenses on Seagrove, but Debtor is not currently paying Seagrove or Beach Club expenses as the properties are in foreclosure and BOFA advanced the real estate taxes.

88.     Debtor's Schedule J includes $3,000.00 in 'Legal Expenses' yet Debtor is representing himself in the BOFA Foreclosure litigation.

//

//

ADVERSARY COMPLAINT

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814
916.929.6865

89.     Moreover, Defendant has failed to satisfactorily explain what happened to at least $1,641,146.50 in gross income since January 2014 and $835,580.00 in cash equivalent assets obtained through the Divorce Orders given that Defendant allowed both Seagrove and Beach Club to enter foreclosure due to failure to pay mortgages, HOA fees, and other expenses between 2015 and 2017.

90.     As such, Defendant should be denied discharge.

WHEREFORE, Plaintiff prays that this Court determine that:

1.     Defendant's obligations and debts to Plaintiff in an amount not less than $441,237.28 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(15);

2.     Defendant's obligations and debts to Plaintiff in an amount not less than $873,661.83 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(2);

3.     Defendant is denied a discharge pursuant to 11 U.S.C. § 727(a)(3);

4.     Defendant is denied a discharge pursuant to 11 U.S.C. § 727(a)(5);

3.     Plaintiff is awarded recovery of costs and attorneys' fees incurred in prosecuting this adversary proceeding pursuant to Cal. Fam. Code §2030, *et seq.*; and,

3.     For such other relief as the Court deems just and appropriate.

Date:  December 29, 2017          YOUNG AND LAZZARINI

/s/ Nicholas Lazzarini
_____
NICHOLAS LAZZARINI
Attorney for Plaintiff
JENNIFER BUCHANAN

ADVERSARY COMPLAINT

- 15 -

**EXHIBIT 1**

# Schedule A

JIM BUCHANAN v. JENNIFER BUCHANAN

DOM: 10/20/1990
DOS: 11/28/2011

**ASSETS & LIABILITIES CHART**

| NO. | DESCRIPTION OF ASSET/LIABILITY | NET FMV | HUSBAND | WIFE | NOTES |
|---|---|---|---|---|---|
| | **REAL ESTATE:** | | | | |
| 1. | 2310 Westfield Road, CLT, NC (Marital Residence) | 174,236.00 | | 174,236.00 | Appraised value is 615,000. New Tax Value is $668,000; BofA Mortgage 9981 is $440,784 as of 4/13 |
| 2. | 11-B Seagrove Lane, Wild Dunes, SC (Rental) | 68,825.00 | | | Realtor estimate is FMV is $750,000 - 2012 Tax Value is $820,000 - BofA Mortgage 5043 is $6244/7.91 as of 3/7/13; BofA HELOC 7599 is $58,757.49 as of 3/7/13; There is no longer a LOC is $70,000. Parties agree to equally share monthly carrying costs or n |
| 3. | 1 Beach Club Villa, Wild Dunes, SC (Rental) ~~(445,525)~~ + contents $443,525 $443,525 | ~~(445,525)~~ | ~~(443,525)~~ | | FMV is $850,000 - 2012 Tax Value is $983,000 BAC commercial mortgage is $1440525 as of 4/13. H assumes all monthly costs and responsibility for the mortgage. |
| 5. | **VEHICLES:** | | | | |
| 6. | Wife's 2011 Mini Cooper | 33,000.00 | | 33,000.00 | Titled Jointly - H's Value |
| 7. | Son's 2011 Ford Escape | 18,000.00 | | | Titled to Husband - H's Value |
| 8. | Husband's 2005 Acura MDX | 7,000.00 | 7,000.00 | | Titled to Husband - H's Value |
| 9. | | | | | |
| 10. | **BANK ACCOUNTS:** | | | | |
| 11. | Joint BofA Interest Checking 3606 (Condo Account) | 1,585.00 | | | DOS balance per 11/28/2011 bank stmt |
| 12. | JOINT BofA Interest Checking 8731 (Wife uses) | 27,829.00 | | | DOS balance per 11/28/2011 bank stmt |
| 13. | BofA Checking 2336 (Weslin's Account) | 202.00 | | | as of 11/04/2012 |
| 14. | HUSBAND'S BofA Checking 8671 | 16,550.00 | | | as of 11/04/2012 |
| 15. | | | | | |
| 16. | **INVESTMENT ACCTS / STOCKS:** | | | | |
| 17. | Colonial Fund Investment | 70,000.00 | 67,000.00 | | 3,000.00 H's value - H says should liquidate within 2 years |
| 18. | Merrill Lynch BAC Restricted Stock 2013 | $249,525.81 | $73,107.81 | | 80,700.75 Paid on or about 2/15; 80,444.61 cash; 68,309.38 tax withheld; 66662 shares of BAC; 15000 transferred to 3606 for condo expenses therefore equal distribution would have been $73107.81. On 3/4 Jennifer took $80700.75 |
| | RSU 2014 15,960.50 @ $12.15 as of 3/7/13 | 193,920.00 | 193,920.00 | | |
| | RSU 2015 9956.50 @ $12.15 as of 3/7/13 | 120,996.00 | 120,996.00 | | |
| 19. | H's BAC Stock Options (906,360 shares) | X | | | All vest and expire between 2014 and 2018 win strike prices from $40.78 to $53.85) |
| 20. | Merrill Lynch CMA Edge 71565 | 443.00 | 443.00 | | as of 11/04/2012 |
| 21. | Fidelity Brokerage 4460 | 376.00 | 376.00 | | as of 11/04/2012 |
| 22. | Son's 509 College Plan | 13,823.00 | | | |
| 23. | | | | | |
| 24. | **JEWELRY:** | | | | |
| 25. | | | | | |
| 26. | | | | | |
| 27. | **ART & COLLECTIBLES:** | | | | |
| 28. | | | | | |
| 29. | | | | | |
| 30. | **SILVER, CHINA, CRYSTAL:** | | | | |
| 31. | | | | | |
| 32. | **HOUSEHOLD GOODS:** | | | | |
| 33. | Household Goods to Wife | 50,000.00 | | 50,000.00 | H Counter offer as of 3/7/13 |
| 34. | Household Goods to Husband | 4,000.00 | 4,000.00 | | Mother's silver, 2 books |
| 35. | **RETIREMENT ACCOUNTS:** | | | | |
| 36. | Wife's Merrill Lynch IRA 89015 | 135,796.00 | | 135,796.00 | per 11/04/2011 stmt |
| 37. | Husband's Merrill Lynch IRA 89013 | 1,164.54 | 1,164.54 | | as of 12/31/12 |
| 38. | Joint IRA | | | | Does not exist |
| 39. | H's U.S. Trust IRA Rollover 9119 | 220,118.24 | 220,118.24 | | as of 12/31/12 includes disbursements of 20,000 in 2012. No disbursements in 2013 |
| 40. | BofA 401(k) Restoration Plan 99202 | 153,784.96 | 76,892.48 | 76,892.48 | Transferred 119,029.01 to 8731 on 3/1; 34,755.95 taxes withheld; H transferred 59514 to 8671 and offered for W to do the same to her account |
| 41. | H's BofA Qualified Pension Cash Balance Plan 99201 | 156,742.53 | 156,742.53 | | lump sum payout in May if paperwork signed 3/14 |
| 42. | H's BofA Non-Qualified Pension Restoration Plan 99200 | 40,913.14 | 40,913.14 | | Payout to occur on our about 3/15. Cash proceeds, net of tax withholding to be transferred into 8731. |
| 43. | | | | | |
| 44. | **LIFE INSURANCE:** | | | | |
| 46. | **BUSINESS INTERESTS:** | | | | |
| 47. | | | | | |
| 48. | **OTHER:** | | | | |
| 49. | 2011 Income Tax Refunds | 74,742.32 | 34,871.16 | 39,871.16 | All paid into 8731 and W took 5000 to her own account |
| 50. | 2012 Income Tax Refund/Cost | | | | Equal distribution when taxes are filed in October 2013 |
| 51. | **DIVISIBLE PROPERTY:** | | | | |
| 54. | **DEBTS:** | | | | |
| 55. | BofA Platinum World Points MasterCard 0186 | (78,669.06) | (78,669.06) | | H Counter offer as of 3/7/13 |
| 56. | US Airways MasterCard | | | | As of 3/07/13 |
| 58. | **TOTALS:** | 1,244,976.48 | 486,550.94 | 593,496.39 | |
| 61. | **SEPARATE PROPERTY:** | | | | |
| 62. | Wife's Whole Life Insurance Policy | | | | |
| 45. | H Term Insurance | | | | two term policies with NA Life of $1 million total death benefit |

Numbers are in dispute. The use of this chart is only for distributional purposes.

# EXHIBIT 2

**JAMES BROOKS BUCHANAN,**

**AND**                                    **MEMORANDUM OF AGREEMENT**

**JENNIFER F. BUCHANAN,**

The parties participated in a mediated settlement conference which was conducted by Robert S. Blair, Jr., and agreed upon a settlement of the claims herein. This document is intended to set forth the terms of that settlement in a summary fashion.

1.    The items of property and the debts listed on the attached spreadsheet marked as Exhibit A will be distributed as set out therein. Exhibit A is attached herein.

2.    Any additional terms of the settlement are set out in Exhibit B attached hereto and incorporated herein.

3.    There shall be a distributive award, in the amount of $30,000.00 (tax free) payable by Husband to Wife to be paid from Husband's Bank of America Pension Cash Balance Plan as soon as the Plan is distributed to Husband.

4.    Each party shall execute Deeds, certificates of title, and such other documents as may be necessary to transfer title to items of property to the party to whom such items are distributed.

5.    The fees of the mediator shall be split equally by the parties.

6.    Each party shall bear his or her own legal fees and other expenses in connection with this case.

7.    The settlement of the parties herein completely resolves all rights, claims, and obligations of the parties with respect to equitable distribution of marital property, separate property, divisible property, marital and non-marital debts, and all other claims and rights of the parties concerning the division of their property and debts under any other law. Henceforth neither party shall have any further claim against the other party for a division of property or debts.

8.    This document shall be binding upon the parties and their assigns, heirs, and personal representatives. Rob Blair shall be the arbitrator for any disputes as to the form of the formal document to be prepared herefrom.

9.    Spousal support. Beginning June 1, 2013 through August 31, 2013, Husband shall pay to Wife $10,818.00 per month plus 25% for gross up. Beginning September 1, 2013 through August 31, 2014, Husband shall pay to Wife $7,462.00 per month plus 25% for gross up. Beginning September 1, 2014 through December 31, 2021, Husband shall pay to Wife $5,328.00 per month plus 25% for gross up.

## SCHEDULE B

## OTHER SETTLEMENT TERMS

1.	Both parties will make good faith attempts to refinance Westfield Road residence and Beach Club Villa with Wife making such good faith attempt within 6 months of Husband's refinance or sale of Beach Club Villa.

2.	Seagrove Lane shall continue to be on the market for sale. In the meantime, it shall be used exclusively as rental property. Wife shall be able to stay at Seagrove Lane when she is there to repair or perform maintenance and shall be bound by IRS guidelines regarding personal use of rental property. The parties agree to equally share monthly carrying cost above and beyond the rental income and to split equally any rental income therefrom if there is a surplus.

3.	The parties shall file separate Federal and State Income Tax Returns for 2013. Wife shall claim dependency exemption and head of household for 2013. As to 2012 taxes, the parties agree to file jointly and select a tax accountant by July 1, 2013 and both parties will cooperate in providing necessary documents to the accountant by August 1, 2013. For 2012 returns, any refunds shall be split equally and Husband shall be solely responsible for any liability.

4.	Each party shall keep any household goods in their possession except that Husband shall receive his mother's silver and the two books from his family within the next 30 days.

5.	Husband shall continue to cover Wife under his COBRA coverage until either November, 2013 when it terminates or until Wife is able to obtain her own medical insurance coverage, whichever comes first. Beginning December, 2013 ,or earlier if Wife obtains her own coverage, Husband shall pay an additional 750.00 (plus gross up of 25%) through the month of August, 2014 in additional alimony to cover Wife's medical insurance coverage cost, or the actual cost of such coverage if it is less than 750.00 per month. This additional alimony shall be subject to the same terms of tax deductibility and termination as set out earlier herein.

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

I, _Robert S. Blair Jr._, a Notary Public in and for said County and State, do hereby certify that **JAMES BROOKS BUCHANAN** personally appeared before me this day and acknowledged the due execution of the foregoing **MEMORANDUM OF AGREEMENT** for the purposes expressed herein.

WITNESS my hand and notarial seal, this _9th_ day of May, 2013.

_Robert S. Blair Jr._

[SEAL]

_Robert S. Blair Jr._, Notary Public
*[Type/Print Name of Notary]*

My Commission Expires: _6/21/2014_

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

I, _Robert S. Blair Jr._, a Notary Public in and for said County and State, do hereby certify that **JENNIFER F. BUCHANAN** personally appeared before me this day and acknowledged the due execution of the foregoing **MEMORANDUM OF AGREEMENT** for the purposes expressed herein.

WITNESS my hand and notarial seal, this _9th_ day of May, 2013.

[SEAL]

_Robert S. Blair Jr._

_Robert S Blair Jr._, Notary Public
*[Type/Print Name of Notary]*

My Commission Expires: _6/21/2014_

4

# EXHIBIT 3

STATE OF NORTH CAROLINA                    SEPARATION, PROPERTY SETTLEMENT,

                                                    SUPPORT OF WESTIN, AND

COUNTY OF MECKLENBURG                              ALIMONY AGREEMENT

This **SEPARATION, PROPERTY SETTLEMENT, SUPPORT OF WESTIN, AND ALIMONY AGREEMENT** is made and entered into this 12th day of December, 2013 by and between **JENNIFER F. BUCHANAN** hereinafter referred to as "Jennifer" and **JAMES B. BUCHANAN** hereinafter referred to as "Jim". Jennifer and Jim are residents of Mecklenburg County, North Carolina.

## FACTUAL BACKGROUND

A.     **Purpose.**     The parties desire to enter into this Agreement to:

i.     confirm their date of separation and declare that they desire to live

separately;

ii.     equitably divide and distribute their marital assets and liabilities;

iii.     set forth their agreement regarding alimony for Jennifer;

iv.     set forth their agreement regarding custody and support of their minor child, Westin; and

v.     set forth their agreement regarding other marital issues.

1

The six sections of this Agreement ("Factual Background", "Separation Agreement, "Property Settlement Agreement", "Alimony", "Support of Westin", and "General Provisions") are not integrated with one another. Each of these sections is separate and independent of the other.

B.   **Marriage**. The parties were married to one another on October 20, 1990, and physically separated from one another on or about November 24, 2011.

C.   **Children**. One child was born to the marriage of the parties, Westin (born February 16, 1995).

D.   **Representation**. This Agreement is entered into freely and voluntarily. Neither Jennifer nor Jim is under any duress, coercion or other circumstance which in any way negates the free action of Jennifer or Jim to sign this Agreement.   With respect to the negotiations resulting in this Agreement, Jennifer has been represented by independent counsel of her own choice, Marshall H. Karro of the law firm of Karro, Sellers & Langson.   With respect to the negotiations resulting in this Agreement, Jim has been represented by independent counsel of his own choice, Katherine S. Holliday of the law firm of James, McElroy & Diehl, P.A.

E.   **Disclosure**. The parties have made a full and fair disclosure to each other of all property and interests in property, real and personal, tangible and intangible and of all debts known by either of them for which each, or the other, is or may be liable. This disclosure has been consistent with the collaborative process in which the parties engaged during the negotiation of this Agreement. Each party is entering into this Agreement based upon the understanding that he or she has been provided complete and accurate information regarding such interests by the other party.   Each party hereby stipulates and

2

confirms that this Agreement sets forth, in some manner, all assets and liabilities known by him or her. It is understood that the household furniture, art, housewares and jewelry have been referred to generally and not specifically.

F.     **Consideration.**   The consideration for this Agreement is the giving of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party.

## SEPARATION AGREEMENT

1.     **Separation.** The parties agree that they physically separated from one another on or about November 24, 2011.  It shall be considered lawful at all times thereafter for each party to live separate and apart from the other at such place or places and with such person or persons as each may deem fit, or as each may desire, and as he or she may freely choose, free from all interference, authority and control, direct or indirect, by the other party, as fully as if each party were unmarried.  Neither party shall molest or interfere with the other party in any manner at any time, nor shall either party compel or attempt to compel the other party to cohabit or dwell with him or her in any way whatsoever.

2.     **Freedom to Engage in Contract.**  From and after the date of separation each party shall be considered free to carry on and engage in any employment, business, trade or profession each may desire, choose or deem fit.  Each party may contract as though they had never been married.

3

## PROPERTY SETTLEMENT AGREEMENT

3.    <u>Property Division.</u>  The parties are mindful of their rights to an equitable distribution of their property as provided under North Carolina General Statutes §50-20, <u>et seq.</u>  It is, however, the intent of the parties to reach an agreement between themselves by means of this Agreement as to the division of their marital and divisible property, both real and personal, tangible and intangible.  In view of the foregoing, each party has agreed to a division of the parties' marital assets and liabilities as set forth herein.

4.    <u>Property Transfer</u>.  The parties shall cooperate with each other to schedule reasonable times for pickups or deliveries of items of tangible property distributed to the other herein but not in the entitled party's possession.

5.    <u>Additional Instruments</u>.  Each party shall execute all instruments including, but not limited to, deeds, car titles, stock certificates, assignment forms for tax exemptions and the like, that may be necessary from time to time to confirm such transfers as are set out herein and to effect the terms of this Agreement, so long as such party does not thereby become obligated or assume any responsibility under such instrument or agreement not required by this Agreement.  It is agreed on the part of each party hereto that, in the event of a sale, transfer, or other conveyance of property (real, personal, or mixed), now owned or hereafter acquired by either party, if it should become necessary in order to guarantee or pass good title thereto for the other party to this Agreement to execute any deed, conveyance, bill of sale, or other legal instrument concerning the dealing in such property, then in such

event the other party to this Agreement agrees to and will sign any instrument or conveyance which may be reasonably required to perfect title in the party to whom it is sought to be conveyed, so long as such party does not thereby become obligated or assume any responsibility under such instrument or agreement not required by this Agreement. It is covenanted and agreed between the parties that each of them shall and will, at any time or times hereafter, make, execute, and deliver any and all such other further assurances as either of said parties shall reasonably require for the purpose of giving full effect to these agreements and to this covenant, so long as no obligation is thereby imposed upon the party whose signature is sought by the other.

6.     **2310 Westfield Road, Charlotte, N.C. 28207.** The parties own a house and lot located at 2310 Westfield Road, Charlotte, N.C. This property is encumbered by a first lien Deed of Trust Note in favor of Bank of America in the approximate sum of $440,764. Contemporaneously with the execution of this Agreement, Jim shall convey all of his right, title and interest in this property to Jennifer by means of an appropriate Special Warranty Deed. Jennifer shall assume sole responsibility for all expenses incident to ownership including, but not limited to, the timely payment of ad valorem property taxes, homeowners insurance premiums, all maintenance, utilities, and the timely satisfaction of the underlying indebtedness. Jennifer indemnifies Jim and holds him harmless from any such liability. Notwithstanding the above, Jennifer shall utilize her best efforts to refinance the underlying indebtedness into her individual name (removing Jim as an obligor within six months of Jim's refinancing (into his individual name) the indebtedness encumbering the Beach Villa property as set out below. If Jennifer does not qualify for such refinancing (at market rates), she shall remain under a

continuing obligation to make "good faith efforts" to obtain such refinancing as expeditiously as possible.     Upon Jim's request, but no more often than quarterly, Jennifer shall provide to Jim documentation of timely payment of the monthly mortgage. At any time, if Jennifer is unable to make a monthly mortgage payment by the due date and fails to do so, she must notify Jim. Jim may then assume responsibility for making the monthly mortgage payments and require the house to be placed on the market for sale. Jim shall choose a realtor and decide on the listing price with the realtor. Jennifer shall sign the listing agreement with the realtor chosen by Jim. All decisions regarding the marketing and sale of the property, including but not limited to choosing a realtor, setting the listing price, deciding about fix-ups and repairs, etc. shall be made by Jim as long as he is making the monthly mortgage payments  Once the house is placed on the market, Jennifer shall be obligated to maintain the home in good repair and marketable condition, and she shall accommodate all requested showings in order to effectuate a sale. Jim and Jennifer must accept any offers to purchase within ninety-seven percent (97%) of the then current list price. The list price shall be lowered by three percent (3%) every sixty (60) days until the house is sold. Jim shall be reimbursed first from the net proceeds for any and all expenses and payments he made for the mortgage, property taxes, homeowners' insurance, fix-up and repairs, etc. to maintain the property through the sale. Any remaining net proceeds shall be distributed to Jennifer.

7.    **11-B Seagrove Lane, Wild Dunes, S.C.** This is a condominium which is jointly owned by the parties and utilized as rental property in the Wild Dunes development. It is currently on the market for sale. The parties have agreed that this property shall continually remain on the market for sale until sold at fair

6

market value. Pending such sale, the property shall be used exclusively as rental property subject to IRS guidelines regarding personal use of rental property. For the purpose of filing individual federal income tax returns, each party shall be liable for one-half of any "Schedule E" income and one-half of any "Schedule E" loss arising from the operation of this property as a rental unit. Jennifer shall be permitted to reside at Seagrove Lane while she is providing or directing repair or maintenance service for this property. Other than for this purpose, neither party shall occupy this property pending its sale unless rented through Carolina Coastal Properties. As equal partners, the parties shall share equally in the monthly "carrying costs" associated with this property and shall each equally supplement the rental proceeds if there is a "shortfall" in the rental proceeds after utilizing such funds to service the underlying mortgages as well as other expenses associated with this property including, but not limited to, condominium Owners Association dues, assessments and other payments due Wild Dunes, property taxes insurance premiums, maintenance, utilities, etc. This property is subject to two mortgages, a first mortgage in favor of Bank of America in the approximate sum of $624,417 and a Home Equity Line of Credit also in favor of Bank of America in the sum of $58,757. Upon sale of this property, the parties will equally divide the net proceeds of such sale after the satisfaction of the underlying indebtedness, the payments of sales commissions and other closing costs. It is the intent of this provision for the parties to equally share in all profits and liabilities arising from their joint ownership. All rental proceeds shall be deposited into Bank of America account #3606. All expenses pertaining to this unit shall be paid exclusively from this account. The parties agree that pending the sale of this property no funds shall be drawn down from the HELOC (it shall be treated as a closed

7

account) and that no funds shall be withdrawn from Bank of America account #3606 unless such funds are used for purposes solely related to the operation of this property as a rental unit. This account and the operation of this property as a rental unit shall be handled by Jennifer, including the preparation of "Schedule E". It is anticipated that there will be an annual shortfall between the annual rental revenues and the expenses incident to the ownership and operation of this property as a rental unit. Based upon prior history, the anticipated annual shortfall will be approximately $31,600. Each party shall be responsible for one-half of the actual annual shortfall. The parties have agreed that Jim will pay his portion of the anticipated shortfall in two (2) increments. The initial payment of $10,000 shall be due on December 15, 2013 and the second payment of $5,800 due on November 1, 2014. These payments will continue to be made on these due dates each year and in these amounts until the property is sold. Any additional sums necessary to satisfy any shortfall in the actual expenditures or any reimbursements due Jim for over-payment of the actual expenses will be accounted for by Jennifer at the end of each twelve (12) month period by a "true-up" between the anticipated expenses and the actual expenses. The intent of this provision is for both parties to make equal cash contributions to this account necessary to satisfy the shortfall from rental revenues and to do so in a manner which will limit periodic billings by Jennifer to Jim. Jennifer shall keep Jim informed of passwords and any other information necessary for Jim to maintain his online access to the Bank of America account #3606, as well as a monthly accounting of the income and expenses of the Seagrove property. She will periodically advise Jim of any shortfalls in this account beyond these estimated amounts so it can be supplemented as needed in a timely fashion. The parties shall fully cooperate with each other in

8

facilitating an expeditious sale at fair market value as well as generating as much rental income as possible pending sale. Between June 1, 2013 and the execution of this Agreement, the parties each made various payments, deposits and withdrawals from the Bank of America account #3606. The parties have reconciled these transactions and agreed that Jennifer owes $637 to the account. Within 10 days of execution of this Agreement, Jennifer shall deposit this sum into the Bank of America account #3606.

8.    **Beach Club Villa, Wild Dunes, S.C**.  This is another condominium which is jointly owned by the parties and which has also been utilized as a rental property in the Wild Dunes development. It is encumbered by a "commercial mortgage" in favor of Bank of America which has an approximate balance of $1,460,525. This underlying debt significantly exceeds the fair market value of the property which is approximately $1,050,000 based upon a current appraisal. Contemporaneously with the execution of this Agreement, Jennifer shall convey to Jim by an appropriate South Carolina Deed all of her right, title and interest in this property. Jim shall assume all liability incident to ownership of this property including, but not limited to, the timely payment of condominium Owners Association dues, assessments and other payments due Wild Dunes, property taxes, insurance premiums, maintenance, utilities, and the timely satisfaction of the underlying indebtedness. Jim indemnifies and holds Jennifer harmless from all such liability.  Notwithstanding the above, Jim shall exercise his best efforts to refinance this property into his individual name at such time as he may be approved for such refinancing.  In the event Jim decides to place this property on the market for sale, he will be exclusively responsible for the satisfaction of the underlying mortgage in the event of any deficiency

between the net sales proceeds and the then-existing principal loan balance. Upon Jennifer's request, but no more often than quarterly, Jim shall provide to Jennifer documentation of timely payment of the monthly mortgage. At any time, if Jim is unable to make a monthly mortgage payment by the due date and fails to do so, he must notify Jennifer. Jennifer may then assume responsibility for making the monthly mortgage payments and require the beach Club condo to be placed on the market for sale. Jennifer shall choose a realtor and decide on the listing price with the realtor. Jim shall sign the listing agreement with the realtor chosen by Jennifer. All decisions regarding the marketing and sale of the property, including but not limited to choosing a realtor, setting the listing price, deciding about fix-ups and repairs, etc. shall be made by Jennifer as long as she is making the monthly mortgage payments. Once the house is placed on the market, Jim shall be obligated to maintain the condo in good repair and marketable condition, and he shall accommodate all requested showings in order to effectuate a sale. Jim and Jennifer must accept any offers to purchase within ninety-five percent (95%) of the then current list price. The list price shall be lowered by three percent (4%) every sixty (60) days until the condo is sold. Jennifer shall be reimbursed first from the net proceeds or by Jim for any and all expenses and payments she made for the mortgage, property taxes, homeowners' insurance, condo association dues, fix-up and repairs, etc. to maintain the property through the sale. Any remaining net proceeds shall be distributed to Jim. Any losses shall be Jim's responsibility to pay.

9.    **Wild Dunes Club Membership.** The parties own a membership in the Wild Dunes Club which is held in Jennifer's individual name. They paid $3,500 for this membership as an initiation fee but it is not an equity membership. Jennifer shall transfer this membership into Jim's individual name

10

contemporaneously with the execution of this Agreement. Jim shall maintain the membership pending the sale of the Seagrove Lane property and may elect to continue the membership after such sale in his discretion. Jennifer waives any further interest in this membership and shall not incur any further charges incident to this membership.

10.    **Peninsula Club Membership Refund.** The parties previously owned an equity  membership in the Peninsula Club. The parties are owed a refund of a portion of their initiation fees, which is anticipated to be approximately $12,000 to $15,000. When this refund is received, it shall be equally divided between the parties.

11.    **Automobiles.**

    a)    The 2005 Acura MDX which Jim currently operates is hereby distributed to him as his sole and separate property free from any right, title, claim or interest of Jennifer. Hereafter, Jim shall be solely responsible for all maintenance expenses, insurance payments, taxes, debts or other liabilities associated with the 2005 Acura MDX.

    b)    The 2011 Ford Escape is titled in Jim's individual name but is designated as Westin's automobile. Hereafter, Jim shall be solely responsible for all maintenance expenses, insurance payments, taxes, debts or other liabilities associated with the 2011 Ford Escape.

    c)    The 2011 Mini Cooper which Jennifer currently operates is distributed to her as her sole and separate property free from any right, title, claim or interest of Jim. This vehicle is currently

11

titled in the joint names of the parties. Upon execution of this Agreement, Jim shall transfer title to this vehicle to Jennifer. Hereafter, Jennifer shall be solely responsible for all maintenance expenses, insurance payments, taxes, debts or other liabilities associated with the 2011 Mini Cooper.

12.    **Bank Accounts & Investment Accounts.**

a)    **Bank of America Joint Interest Checking Account #3606.** This account is maintained in the parties joint names. It had a balance of approximately $1,985 as of November 28, 2011 (date of separation). This account has been utilized for the deposit of rental income from the Wild Dunes properties and the payment of expenses associated with such properties. The parties shall continue to use this account for the purpose of operating 11-B Seagrove Lane pending its sale. Any balance remaining in this account after the closing of such sale shall be equally divided between the parties.

b)    **Bank of America Joint Interest Checking Account #8731.** This account was maintained in the parties joint names. It had a balance of approximately $27,829 as of November 28, 2011. This account was utilized primarily by Jennifer as a source of funds for recurring monthly expenditures. This account was closed prior to the execution of this Agreement.

c)    **Bank of America Checking Account #2336.** This account is maintained in Jennifer's individual name for the benefit of Westin. It had a balance of approximately $202.00 as of November 4, 2012.

12

d)   **Bank of America Checking Account #8871.** This Account is maintained in Jim's individual name. It had a balance of approximately $10,550 as of November 4, 2012.

e)   **Merrill Lynch Account #5F571S65.** This account is maintained in the joint names of the parties. It has been utilized as a repository for Bank of America Restricted Stock units. On or about February 15, 2013, Jim received approximately $249,525 resulting from the vesting and sale of Bank of America stock. Approximately $88,309 was withheld for Federal and State income tax liability and approximately $15,000 was transferred to Bank of America Account #3606 to be utilized for ongoing condominium expenses. Jennifer received approximately $80,700 of the remaining balance and Jim received approximately $73,107. Each party shall retain his or her respective allocation of these funds as his or her separate property. This account shall be closed upon execution of this Agreement.

f)   **Merrill Lynch CMA Edge Account #71S65.** This account is maintained in Jim's individual name. It had a balance of approximately $443.00 as of November 4 2012. This account shall be distributed to Jim as his sole and separate property.

g)   **Fidelity Brokerage Account #4460.** This account is maintained in Jim's individual name. It had a balance of approximately $560.00 as of November 4, 2012. This account shall be distributed to Jim as his sole and separate property.

h)   **529 College Plan.** This account with Bank of America is a "529" account to be utilized for expenses of Westin's college education. These funds shall be designated exclusively for this

13

purpose and any balance remaining upon Westin's graduation from an accredited college or university shall be transferred to Westin. This account is currently administered by Jennifer and is titled under her name as owner for the benefit of Westin. It had a balance of $13,823 as of January 1, 2013. Simultaneously with the execution of this Agreement this account shall be transferred to Jim. This account shall hereafter be administered by Jim who will have authority to disburse funds for tuition, books, room and board, computers, and any other expenses authorized under the 529 account. Westin is currently enrolled in an accredited university as a freshman.

13. **Retirement Accounts.**

a) **Merrill Lynch IRA Account #99015.** This account is in Jennifer's individual name and shall be retained by her as her sole and separate property.

b) **Merrill Lynch IRA Account #99013.** This account is in Jim's individual name and shall be retained by him as his sole and separate property.

c) **U.S. Trust IRA Rollover Account #9119.** This account is in Jim's individual name and shall be retained by him as his sole and separate property.

d) **Bank of America 401(k) Restoration Plan.** The assets in this Plan have been liquidated and the proceeds from such liquidation shall be divided equally between Jennifer and Jim (less applicable withholding of $34,755.95 for Federal and State taxes).

14

e)   **Bank of America Cash Balance Plan Account #99201**. This Bank of America Cash Balance Plan shall be distributed to Jim as his sole and separate property free from any right, title, claim or interest of Jennifer. Jennifer shall sign the form in her possession which waives her right to these funds. This form (transfer document) shall be held in escrow by Jim's attorney, Katherine S. Holliday, until such time as Jim has paid the distributive award to Jennifer as set out in Paragraph 16 herein. Upon payment of the distributive award, Jim's attorney may release the transfer document to Jim.

f)   **Bank of America Pension Restoration Plan Account #99200**. This Plan was liquidated on or about March, 15 2013, and the proceeds deposited into account #8731. This account shall be deemed distributed to Jim as his sole and separate property.

14.   **Jewelry.** Each party shall receive his or her own jewelry free of all right, title, claim or interest of the other party.

15.   **Household Items.** Jennifer shall retain all household items (i.e. furnishings, appliances, wall coverings, electronics, etc.) currently located at 2310 Westfield Road, Charlotte, N.C., with the exception of Jim's mother's silver and two books given to him by his family. (As of the execution of this Agreement, Jennifer has not been able to locate the book, "Without Peril".) These items (with the exception of "Without Peril" unless subsequently located) will be delivered by Jennifer to Marshall Karro's office within five (5) days of the execution of this Agreement. Katie Holliday shall make arrangements to retrieve these items from Marshall Karro's office and deliver them to Jim. Jim shall retain all household

items currently in his possession or control including all items contained in the Beach Club Villa at Wild Dunes, S.C. It is anticipated that the contents of Seagrove shall be sold with the unit and shall remain intact within the unit. In the event that the unit is sold exclusive of contents, then the parties shall each be entitled to one-half of the contents.

16.    **Distributive Award.**    Jim shall pay to Jennifer a cash distributive award in the amount of $40,000 within ten (10) days of execution of this Agreement.

17.    **Distribution of Unsecured Debts.**

   a)    **Unsecured Debts Distributed to Jim.**  Jim shall be solely responsible for all unsecured debts or credit cards held in his sole name and he shall indemnify and hold Jennifer harmless from any responsibility for unsecured debts in his name.

   b)    **Unsecured Debts Distributed to Jennifer.**  Jennifer shall be solely responsible for all unsecured debts or credit cards held in her sole name and she shall indemnify and hold Jim harmless from any responsibility for unsecured debts in her name.

   c)    **Confirmation of Joint Unsecured Debt.**  The parties hereby confirm that there are no known joint credit card account(s) or other joint unsecured debt(s). In the event an account is determined to be joint, the parties shall close such joint account immediately. Each party, however, shall be responsible for all debts he or has incurred on a joint credit card accounts through and following the signing of this Agreement. In the event other or further joint

16

unsecured debts are discovered, such joint debt(s) shall be immediately closed (within seven (7) days from such discovery) and no further charges shall be made against such joint debt(s). Further, in the event the parties discover any unsecured debt held in their joint names which is not addressed and distributed herein, the party who incurred the debt shall be solely responsible for paying such debt as well as any interest and/or penalties which have accrued thereon.

### SUPPORT OF WESTIN

18.   **Health Insurance.** The parties' son, Westin, has attained his majority and graduated from high school on May 24, 2013.    Jim shall maintain the current health insurance coverage (or its equivalent) with Westin as a beneficiary so long as Westin is enrolled as a full-time student at an accredited college or university.    Jim shall be listed as the "responsible party" for all medical, dental, and/or vision accounts with health care providers for Westin.

| Formatted: Centered |

### ALIMONY TO JENNIFER

19.   **Alimony**. So long as a terminating event has not yet occurred, Jim shall pay alimony to Jennifer as set forth herein. Alimony payments shall be paid in equal twice monthly payments by the 1st day and the 15th day of each month beginning June 1, 2013. Payments shall be made by electronic transfer from an account designated by Jim into an account designated by Jennifer.

17

a)      **Monthly Payment**.   Unless terminated earlier as set forth hereinafter, beginning June 2013 and
        continuing each month thereafter through August, 2013, Jim shall pay the monthly sum of
        $14,424 to Jennifer as alimony.  The monthly alimony shall be paid twice each month in the
        amount of $7,212 by the 1st day and the 15th day.  Beginning September 2013, and continuing
        through August 2014, Jim shall pay the monthly sum of $9,949 to Jennifer as alimony.  The
        monthly alimony shall be paid twice each month in the amount of $4,974.50 by the 1st day and
        the 15th day.  Beginning September 2014 and continuing through December 2021, Jim shall pay
        the sum of $7,104 to Jennifer as alimony.  The monthly alimony shall be paid twice each month
        in the amount of $3,552 by the 1st day and the 15th day.

b)      **Termination of Alimony**.    Alimony shall terminate immediately upon the first to occur of the
        following events:

        i.      death of Jim;

        ii.     death of Jennifer ;

        iii.    remarriage of Jennifer;

        iv.     cohabitation by Jennifer as defined in N.C.G.S. §50-16.9;

        v.      December 31, 2021.

18

c)       **Waiver of Other or Further Alimony.**    Except as set forth hereinabove, Jennifer hereby expressly relinquishes and waives any and all rights to alimony or claims for maintenance and support from Jim.

Jim hereby expressly relinquishes and waives any and all rights to alimony or claims for maintenance and support from Jennifer.

d)       **No Integration with Property Settlement.**  The provisions for payment and waiver of post separation and alimony as set forth above are independent of the property settlement provisions of the Agreement.

e)       **Alimony shall be considered Income to Jennifer for Tax Purposes.**  The alimony payments from Jim to Jennifer from and after the signing of this Agreement shall be includable as income to Jennifer for the purpose of filing Federal and State income tax returns and shall be deductible from Jim's income to the extent allowed by the IRS and the NC Department of Revenue.

f)       Alimony as set out herein shall be non-modifiable unless Jim's income falls below a threshold level of $180,000 for any calendar year occurring during the term of this obligation. Income for the purpose of this paragraph shall be defined as all earnings which would be considered income under the current N.C. Child Support Guidelines. In the event that Jim's income falls below this threshold because of a mental or physical disability or for other reasons which are beyond Jim's control (involuntary), then Jim shall be entitled to a review of his alimony obligation. If Jim and Jennifer cannot agree on an appropriate reduction, then Jim shall be

19

entitled to seek a reduction in his alimony payments before an arbitrator pursuant to the N.C. Family Law Arbitration Act. If Jim obtains a reduction, then Jennifer shall have the right to seek a subsequent modification before such arbitrator if Jim's income significantly increases but does not exceed the threshold amount ($180,000 per calendar year). At any time that Jim's income subsequently exceeds $180,000 per calendar year, then the alimony obligation under this Agreement shall be automatically restored to the contracted sum as set out herein retroactive to January 1st of that calendar year. In no event shall Jim's alimony obligation be modified to exceed his obligation under the terms of this Agreement either as to the term or the monthly payment.

f)     Alimony shall be secured by Jim obtaining a life insurance policy on his life which designates Jennifer as the beneficiary of a death benefit in an initial amount of at least $750,000, which is sufficient to cover his alimony obligation, assuming the obligation is paid for the entire term. Jim shall furnish reasonable documentation to Jennifer evidencing that this policy is in place and shall execute an appropriate authorization allowing Jennifer to communicate directly with the carrier to confirm that this policy is in full force and effect and remain in full force and effect during the term of alimony. Jim may reduce the death benefit to be paid to Jennifer as he satisfies his alimony obligation but it must always be sufficient to cover the remaining balance, assuming the obligation is paid for the entire term (December 31, 2021).

**GENERAL PROVISIONS**

20.    **True-Up of Health Insurance as Additional Alimony for Jennifer.**  Jennifer is currently covered (as of

August 15, 2013) by a health insurance policy through United Healthcare.  She obtained this coverage

incident to her status as a student enrolled in Queens University.  The parties agreed Jim would pay the

premiums for this insurance through August 2013 as additional alimony to Jennifer.  A "true-up"

reconciliation of the actual alimony amounts paid by Jim from June 1, 2013 through December 1, 2013

is required, (including the payment of Jennifer's health insurance for the months of June, July and

August).  The parties have reconciled these payments and agreed Jim owes Jennifer $255.50 as

additional alimony to Jennifer within ten (10) days of execution of this Agreement.

Jennifer's current health insurance coverage includes a $1,500 yearly deductible.  The unintentional

cancellation of Jennifer's previous coverage (as of May 2013) through Aetna Insurance resulted in

losses to Jennifer totaling $3,084.  The parties agree that Jim owes Jennifer a reimbursement amount

of $3,084 for healthcare costs to be paid within ten (10) days f execution of this Agreement.

21.    **Automobile Responsibility.**   Except as otherwise set forth herein, each party shall hold the other

harmless from any liability of whatever nature arising in any way out of his or her use, ownership,

purchase, insuring or operation of any motor vehicle.

22.    **Debts.**   Neither party shall charge or cause or permit to be charged to or against the other any

purchase which either of them may hereafter make, nor create any obligations in the name of or

against the other, nor secure or attempt to secure any credit upon or in connection with the other, or

21

in his or her name. Except as otherwise set forth herein, each party shall pay all debts and discharge all financial obligations which he or she may incur for himself or herself, and each party does hereby agree to indemnify the other against all debts and other obligations which he or she may incur or has incurred from the date of separation forward.

23.    **Income Tax Returns**.

a)      **Tax Year 2012**.    For tax year 2012, it is understood that the parties will file joint income tax returns. For tax year 2012, Jim shall be solely responsible for any federal and / or North Carolina income tax liability and Jim and Jennifer shall equally divide any refund(s) received. The parties have agreed to hire Ron Lamberth of Cherry Bekaert to prepare their 2012 income tax returns. The parties shall equally share any and all fees associated with the accountant's work to prepare the 2012 tax returns. In the event the parties incur any penalties and interest for late filing due to one party's failure to timely provide all necessary information to Mr. Lamberth, all penalties and interest shall be the sole responsibility of the party who caused the late filing.

b)      **Tax Year 2013**. For tax year 2013 forward, the parties shall file separate income tax returns. Jennifer shall be entitled to claim Westin as a dependent exemption and to claim "head of household" status in 2013.

c)      **Tax Years 2014 Forward.** For tax years 2014 and thereafter, Jim shall be entitled to claim Westin for any and all allowable dependency exemptions.

22

d)   **General.** It is agreed and understood that neither party has the right to sign the other's name on any forms, and particularly on any tax-related forms or checks.

e)   **Tax Deficiencies and Refunds.** In the event of any assessment of a deficiency in any income tax filing for 2011 or any prior year for which a joint return is or has been filed, Jim and Jennifer shall equally pay the deficiency. In the event any refund is due for tax year 2011 or any prior year that a joint return was filed, the parties shall equally divide the refund.

24.   **Mutual Release.** Subject to the provisions of this Agreement and except as otherwise provided herein, each party has released and discharged, and by this Agreement does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, release and discharge any and all causes of action, claims, rights, or demands whatsoever, at law or in equity, relating to or arising out of the marriage, which either of the parties ever had or now has against the other, known or unknown.

This release does not apply to:

a)   A no-fault claim for divorce;

b)   Claims of entitlement to any social Security benefits or other governmental entitlements which either party may have by reason of the marriage (which this Agreement does not affect in any manner whatsoever);

c)   Breach or enforcement of this Agreement (including any claims for remedies upon failure to disclose).

23

25.  **Future Claims**.  As provided herein, the parties have already divided between themselves and to their mutual satisfaction, all assets owned and liabilities owed by them individually and jointly.  Each party hereby waives, releases and relinquishes unto the other any and all right, title and interest in the property herein above assigned to the other.  Hereafter, neither party shall make any claim against the other inconsistent with this Agreement for any property assigned to the other hereunder or for any property currently held in the name of the other party.

26.  **Future Conveyances**.  Except as otherwise provided herein, each party may from time to time, and at all times hereafter, purchase, acquire, own, hold, possess, encumber, lease, alienate, dispose of and convey any and all classes and kinds of property, real and personal, tangible and intangible, as though unmarried and free from the consent, knowledge, joinder or interference of the other party.

27.  **Estate Rights**. Except as otherwise set forth herein, Jim and Jennifer each waive any right which either may have:

a)  To administer the estate of the other.

b)  To dissent from the Last Will and Testament of the other.

c)  To assert claims or rights in and to the estate of the other.

d)  To assert a statutory share, elective or distributive share in the estate of the other including but not limited to, under N.C.G.S. §30-3.1 and §29-30.

e)  To make any assertion of dower or curtesy in the property of the other.

24

f)    To seek the right of a year's allowance out of the personal property of the other.

g)    To take property pursuant to a Will of the other which was executed prior to the signing of this
      Agreement.

Except as otherwise set forth herein, Jennifer and Jim further waive all other rights or interests in
property, both real and personal, which either party now has or may hereafter acquire arising out of or
accruing to him or her by reason of death of the other party, testate or interstate.

28.    **Release of Equitable Distribution Rights.** The Property Settlement Agreement set forth herein is the
       act of Jim and Jennifer equitably dividing their marital and divisible property as provided under
       N.C.G.S. Section 50-20(d). Each party releases the other from any further claim which could or might
       arise in favor of either under N.C.G.S. Section 50-20 or any other state or federal law involving division
       of property acquired during marriage. As a result of this Property Settlement Agreement, Jim and
       Jennifer each waive and release their right to petition for an equitable distribution of marital and
       divisible property.

29.    **Waiver of Liability for Necessaries.** Each party warrants to the other that he or she shall not seek from
       the other contribution for the payment of expenses for necessaries that he or she may incur. As long
       as the parties are married, each party hereby warrants that at any time services for necessaries are
       rendered, he or she shall provide actual notice to any third party who provides necessaries to him or
       her that he or she is legally separated from the other party and that said provider should have no
       expectation of compensation or reimbursement from the other party by virtue of the parties'

25

marriage. Each party agrees to indemnify, defend, and hold the other harmless from and against third-party creditors who seek compensation from him or her under the doctrine of necessaries under the present and future laws of any jurisdiction.

30.     **Additional Pension and Retirement Provisions**.  Except as otherwise specifically set forth herein, each of the parties hereby expressly waives any legal right either may have under any Federal or State law as a spouse to participate as payee or beneficiary under any interest the other may have in any pension plan, profit sharing plan, or other form of retirement or deferred income plan, including, but not limited to, the right either spouse may have to receive any benefit in the form of a lump sum death benefit, joint or survivor annuity, or pre-retirement survivor annuity pursuant to any State or Federal law, and each of the parties hereby expressly consents to any election made by the other, now or at any time hereafter, with respect to the recipient and the form of payment of any benefit upon retirement or death under any such pension plan, profit sharing plan, or other form of retirement or deferred income plan.  Each party shall, within ten days of the request by the other, execute such documents as may be necessary in order to effectuate the purpose of this provision including, but not limited to, a waiver of rights to any annuity or benefits and a consent to any election or beneficiary designation.

31.     _Divorce_.  Nothing contained herein shall bar or prevent either party from the institution of a suit for absolute divorce on the grounds of one year's separation at such time as the law may allow, provided

26

that the instituting party shall pay all costs thereto and shall make no demand for same from the other party. Any such divorce shall have no effect on the parties' obligations assumed hereunder.

32. **Binding Effect.** Except as otherwise provided herein, all of the provisions of this Agreement shall apply to and be binding and obligatory upon the respective heirs, executors and administrators of each of the parties, and no modification or waiver of any provisions hereof shall be binding unless in writing and executed with the formality then required for the validity of contracts between husbands and wives.

33. **Tax Free Transfers.** The parties further confirm and agree that, in connection with the aforesaid property settlement and division, they have transferred and divided property of approximately equal value, with each party taking the original basis that existed in the property for capital gain transfers, and that their execution of this Agreement and the execution of various documents to effectuate the transfer as set forth above is not a taxable event by either party. In this connection, the parties expressly acknowledge that the division and transfer of property and funds between them as hereinabove set forth is "incident to divorce" and is related to the cessation of marriage as defined in **Section 1041 of the Internal Revenue Code** as amended; and to the extent, if any, that the parties are required to make an election under such Section, the parties make such an election to have no gain or loss recognized on properties transferred between them.

34. **Property Disclosure.** Each party hereto confirms that this Agreement identifies in some manner (even if by general referral) all of the marital assets or liabilities held by either of the parties individually or

27

the parties' jointly. Each party confirms they have given the other party true and accurate information regarding assets of the marriage which are held in either party's sole name. In the event, however, that either Jim or Jennifer has failed to disclose to the other the existence of any marital property subject to equitable distribution or division under the laws of the State of North Carolina or any other jurisdiction, the party whose rights have been prejudiced thereby, in addition to other remedies provided by law and equity, shall be entitled to make application to the court under the laws of the State of North Carolina or any other jurisdiction or sue the other party for damages under this Agreement in an amount at least equal to his or her marital interest in the undisclosed property and shall also be entitled to recover his or her reasonable attorneys' fees.

35.    **Voluntary Act.**  Each party acknowledges that he/she has read this Agreement and understands its contents and provisions; that it is a fair and reasonable agreement to each of them, having due regard to the conditions and circumstances of the parties hereto on the date hereof; that each has signed and executed the Agreement freely and voluntarily and without fear, compulsion, duress, coercion, persuasion or undue influence exercised by either party upon the other or by any other person or persons upon either.

36.    **Effect of Reconciliation.**  In the event the parties were to reconcile and resume the marital relationship (resume living together as husband and wife) and then later separate, the parties acknowledge and agree that the property settlement provisions of this Agreement shall continue in full force and effect and shall be binding on both parties.  Each party commits that, in the event reconciliation is not

28

successful, they shall be governed by the property settlement provisions of this document insofar as it relates to this separation or a later separation. All provisions contained herein regarding the property division shall be deemed to have been executed upon the signing of this Agreement and shall not be affected by a reconciliation of the parties. The property transferred and assigned pursuant to the property settlement provisions of this agreement shall remain the separate property of the parties as stated herein.

37. **Ambiguities shall not be construed against the drafter**. Each party stipulates that he or she has had an opportunity to review this Agreement and request such changes as are necessary to clarify any provision set forth herein. Any ambiguity later found in this agreement shall not be construed against the drafter or the party whose attorney drafted this legal document.

38. **Entire Agreement**. With the exception of parenting issues which are addressed in a Consent Order executed contemporaneously herewith, this Agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth in this Agreement.

39. **Modification or Amendment.** This Agreement can be altered and amended only by further formal written agreement duly executed by the parties. Any failure by either party to specifically perform or enforce performance exactly according to the letter of this Agreement shall not constitute an alteration of the same by way of enlargement, reduction, estoppel or otherwise, unless confirmed in writing by the parties and duly executed by both parties. It is understood that the parties may, by

29

mutual agreement, make temporary modifications from time to time as conditions require but that, absent a further formal written agreement duly executed by the parties, this Agreement shall be binding upon the parties as written. No custom or practice which may develop between the parties in the course of the performance of this Agreement shall be construed as a waiver of the right of either party to insist upon compliance with the provisions hereof by the other.

40.    **Non-Incorporation of Agreement**. This Agreement shall not under any circumstances be incorporated into any subsequent decree, judgment or order of any court unless the parties mutually agree otherwise in writing. This clause may be pleaded in bar of such incorporation. This Agreement or any copy thereof may be admitted into evidence in (A) any legal proceeding for the purpose of barring any claim inconsistent with the provisions of this Agreement and/or (B) any proceedings for the enforcement of this Agreement such as, for example, an action for specific performance of this Agreement or any action for breach of this Agreement. Neither the pleading of the existence of this Agreement nor the introduction of this Agreement (or a copy thereof) into evidence in any such legal proceedings shall constitute a submission of this Agreement to a court for its approval; nor shall such actions constitute a waiver of the provisions of this Agreement; nor shall such actions make the agreements of the parties modifiable; nor shall this Agreement lose its effectiveness if a court should subsequently enforce this Agreement or order a party to specifically perform some obligation hereunder. On the contrary, this Agreement shall remain in full force and effect at all times and shall continue to operate as a bar to any claim which is inconsistent with the provisions of this Agreement.

30

41. **No Recording of Agreement.** This Agreement shall not be recorded without the independent and express written consent of both parties. A Memorandum of Agreement may be recorded in any recording office at any time by either party. The purpose of the recording of a Memorandum of Agreement is to allow the transfer of property pending a divorce action. Any Memorandum of Agreement shall not contain the details of financial provisions of this Agreement.

42. **Specific Performance.** Either party shall have the right to compel the performance of the provisions of this Agreement by suing for specific performance in the courts where jurisdiction of the parties and subject matter exists. Both parties acknowledge that neither party has a plain, speedy or adequate legal remedy to compel compliance with the provisions of this Agreement, that neither party shall be required to repeatedly file suit for any breach of this Agreement, that this Agreement is fair and equitable to both parties, and that an order of specific performance enforceable by contempt is an appropriate remedy for a breach of this Agreement by either party. The right to specific performance of this Agreement shall be in addition to and not in substitution for all other rights and remedies either party may have at law or in equity arising by reason of any breach of the Agreement by the non-complying party. In the event either party files an action for Specific Performance, the parties may opt to use Arbitration to resolve the outstanding issues in such action pursuant to the North Carolina Family Law Arbitration Act. In the event the parties mutually agree to arbitration at that time, each party shall choose one arbitrator and the arbitrators shall mutually agree on a third arbitrator. The three arbitrators chosen shall then hear such issues as exist at that time and the results of such arbitration shall be binding.

31

43. **Attorneys' Fees Upon Breach.** In the event it becomes necessary to institute legal action to enforce compliance with the terms of this Agreement, to interpret this Agreement, or by reason of the breach by either party of this Agreement, then the parties agree that at the conclusion of such legal proceeding the breaching party shall be solely responsible for all legal fees and costs incurred by the other party, such fees and costs to be taxed by the court. The amount so awarded shall be in the sole discretion of the presiding judge and the award shall be made without regard to the financial ability of either party to pay, but rather shall be based upon the fees and expenses determined by the court to be reasonable and incurred by the prevailing party. It is the intent of this paragraph to induce both Jim and Jennifer to comply fully with the terms of this Agreement to the end that no litigation as between the parties is necessary in the areas dealt with by this Agreement. In the event of litigation, it is the further intent to specifically provide that the losing party pays all reasonable fees and costs that either side may incur.

44. **Situs.** This Agreement shall be construed, interpreted and governed by the laws of the State of North Carolina and has been executed in the State of North Carolina.

IN WITNESS WHEREOF, said parties have set their hands and seals to this Agreement in

duplicate originals, one of which is retained by each of the parties, the day and year first above written.

_____(SEAL)　　　_____(SEAL)

JENNIFER F. BUCHANAN　　　　　　　　　　JAMES B. BUCHANAN

_NOTARIAL SEALS ON FOLLOWING PAGE_

33

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I, Toni K. Price, a Notary Public for Mecklenburg County, North Carolina, do hereby certify that **JENNIFER F. BUCHANAN** personally appeared before me this date and is personally known to me through satisfactory evidence and has acknowledged the voluntary and due execution of the foregoing **SEPARATION, PROPERTY SETTLEMENT, SUPPORT OF WESTIN AND ALIMONY AGREEMENT.**

WITNESS my hand and notarial seal this 12th day of December, 2013.

_____ (signature of notary)

Toni K. Price, A Notary Public of North Carolina

My commission expires: April 22, 2018.

============================================================================================

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I, Toni K. Price, a Notary Public for Mecklenburg County, North Carolina, do hereby certify that **JAMES B. BUCHANAN** personally appeared before me this date and is personally known to me through satisfactory evidence and has acknowledged the voluntary and due execution of the foregoing **SEPARATION, PROPERTY SETTLEMENT, SUPPORT OF WESTIN AND ALIMONY AGREEMENT.**

WITNESS my hand and notarial seal this 12th day of December, 2013.

_____

Toni K. Price, A Notary Public of North Carolina

My commission expires: April 22, 2018.

34

**EXHIBIT 4**

STATE OF NORTH CAROLINA          2014 JAN 10 AM 9:29          IN THE GENERAL COURT OF JUSTICE
                                 MECKLENBURG CO. C.S.DISTRICT COURT DIVISION
COUNTY OF MECKLENBURG      BY_____          13-CVD-21647

JAMES B. BUCHANAN,                    )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )          **DIVORCE JUDGMENT**
                                      )
JENNIFER F. BUCHANAN,                 )
                                      )
                    Defendant.        )
_____)

THIS CAUSE was before the undersigned Judge presiding over the December 30, 2013 civil session of the District Court of Mecklenburg County, North Carolina, in Courtroom 8110, upon Plaintiff's motion pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, requesting that the Court grant him an absolute divorce from Defendant as allowed under N.C.G.S. §50-10(d).

After reviewing the record herein, including the verified Complaint of the Plaintiff, the Court finds that there is no genuine issue of a material fact as to Plaintiff's claim for an absolute divorce.

The Court makes the following **FINDINGS OF FACT:**

1.    This is an original action for absolute divorce based on separation of Plaintiff and Defendant for one year.

2.    Defendant was served on or about December 17, 2013 as evidenced by the Acceptance of Service filed in this matter.

3.    Defendant filed an Answer on December 17, 2013.

4.    On December 18, 2013, Plaintiff filed his Motion for Summary Judgment.

5.    This action is at issue and properly called for hearing, after notice was duly given to Defendant.

6.    Plaintiff and Defendant are both citizens and residents of Mecklenburg County, North Carolina, and have been for more than six (6) months preceding the

7.    Plaintiff and Defendant were married to each other on October 20, 1990.

8.    Plaintiff and Defendant separated on November 24, 2011, and have lived continuously separate and apart from each other for more than one (1) year next preceding the institution of this action, and at no time have resumed the marital relationship.

9.    One (1) child was born to the parties during their marriage, to wit: namely Robert Westin Buchanan born February 16, 1995.

Based on the foregoing, the Court concludes as a matter of law that Plaintiff's Motion under Rule 56 should be granted and that he be entitled to an absolute divorce from Defendant based on one year's separation.

IT IS THEREFORE **ORDERED, ADJUDGED AND DECREED** that the bonds of matrimony heretofore existing between Plaintiff and Defendant be, and they hereby are, dissolved and Plaintiff and Defendant are granted an absolute divorce from each other.

This the _9_ day of _January_, 2018.

_Charlotte Brown_
District Court Judge Presiding
Mecklenburg County, North Carolina

A TRUE COPY
CLERK SUPERIOR COURT
BY
Assistant

2

# EXHIBIT 5



**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **James Brooks Buchanan** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
   amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/16

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:      Give Details About Your Marital Status and Where You Lived Before**

1.   **What is your current marital status?**

   ☐  Married
   ■  Not married

2.   **During the last 3 years, have you lived anywhere other than where you live now?**

   ☐  No
   ■  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| **1004 N 192nd Court, APT 302 Elkhorn, NE 68022** | From-To: 1/1/2016 to 6/1/2016 | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |
| **327 Solomon Street Charlotte, NC 28216** | From-To: 7/1/2015 to 1/1/2016 | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |
| **1067 River Rock Lane Danville, CA 94526** | From-To: 8/1/2013 to 7/1/2015 | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |

3.    **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

   ■  No
   ☐  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

Debtor 1    **James Brooks Buchanan**                    Case number (*if known*) _____

---

| Part 2 | Explain the Sources of Your Income |

**4.  Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **$299,136.50** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For last calendar year:**<br>(January 1 to December 31, 2016 ) | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | **$432,991.00** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2015 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **$57,132.00** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| | ■ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | **$374,887.00** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

**5.  Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from<br>each source**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions<br>and exclusions) |
| **For the calendar year before that:**<br>(January 1 to December 31, 2015 ) | **IRA Distribution** | **$20,040.00** | | |

---

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |

**6.  Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

■ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

☐ No.    Go to line 7.

■ Yes    List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

---

Debtor 1    **James Brooks Buchanan**         Case number *(if known)*

     * Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

☐   Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
         During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

       ☐   No.     Go to line 7.
       ☐   Yes     List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not
                 include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an
                 attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| **Barclays Bank Delaware**<br>**100 S West St**<br>**Wilmington, DE 19801** | 7/12/17 $1,500.00;<br>7/14/17 $7,000.00;<br>8/16/17 $7,000.00 | **$15,500.00** | **$8,516.00** | ☐ Mortgage<br>☐ Car<br>■ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |

7.   **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
    *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations
    of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for
    a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and
    alimony.

    ■   No
    ☐   Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8.   **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an
    insider?**
    Include payments on debts guaranteed or cosigned by an insider.

    ■   No
    ☐   Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

**Part 4:**    Identify Legal Actions, Repossessions, and Foreclosures

9.   **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
    List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody
    modifications, and contract disputes.

    ☐   No
    ■   Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Jennifer F. Buchanan vs. James B.**<br>**Buchanan**<br>**16-CVD-185(JCP)** | **Civil Case** | **State of North Carolina,**<br>**County of**<br>**Mecklenburg, District Court**<br>**Division**<br>**PO Box 37971**<br>**Charlotte, NC 28237-7971** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

Debtor 1    **James Brooks Buchanan**      Case number *(if known)*

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Bank of America v. Buchanan;<br>Cross Complaint: Jennifer<br>Buchanan v. James Buchanan and<br>Bank of America<br>2016 CP-10-4936** | **Judicial<br>Foreclosure** | **Charleston County Court of<br>Common Pleas<br>100 Broad Street, Ste 106<br>Charleston, SC 29401-2258** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Seagrove Horizontal Property<br>Regime vs. James B. Buchanan,<br>Jennifer F. Buchanan, and Wild<br>Dunes Community Association,<br>Inc.<br>16-CP-10-6865** | **Judicial<br>Foreclosure** | **State of South Carolina,<br>County of<br>Charleston, Court of<br>Common Pleas<br>100 Broad Street<br>Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

    ■ No. Go to line 11.
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the<br>property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
    ■ No
    ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was<br>taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
    ■ No
    ☐ Yes

**Part 5:**    List Certain Gifts and Contributions

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
    ■ No
    ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600<br>per person<br><br>Person to Whom You Gave the Gift and<br>Address: | Describe the gifts | Dates you gave<br>the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
    ■ No
    ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total<br>more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you<br>contributed | Value |
|---|---|---|---|

Debtor 1    **James Brooks Buchanan**    Case number *(if known)*

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

| Part 7: | List Certain Payments or Transfers |
|---|---|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **The Bankruptcy Group, P.C.**<br>**3300 Douglas Blvd., Suite 100**<br>**Roseville, CA 95661**<br>eric@thebklawoffice.com | **Attorney Fees** | **9/23/2017** | **$5,000.00** |
| **GreenPath, Inc.**<br>**38505 Country Club Drive, Suite 210**<br>**Farmington, MI 48331**<br>**www.greenpath.com** | **Credit Consumer Counseling Course** | **9/14/17** | **$40.00** |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

Debtor 1     **James Brooks Buchanan**     Case number *(if known)*

| Part 8: | List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

| Part 9: | Identify Property You Hold or Control for Someone Else |
|---|---|

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ **No**
☐ **Yes. Fill in the details.**

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

| Part 10: | Give Details About Environmental Information |
|---|---|

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Debtor 1    **James Brooks Buchanan**    Case number *(if known)*

25.  **Have you notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26.  **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:**  Give Details About Your Business or Connections to Any Business

27.  **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☑ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☑ No. None of the above applies.  Go to Part 12.

☑ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **V Bar V, LLC**<br>**5032 Strozzi Way**<br>**Roseville, CA 95661** | **Consulting**<br><br>**N/A** | EIN:    **464468745**<br><br>From-To    **2016** |
| **Buchanan Trust, LLC** | **Holding Company** | EIN:    **82-0802090**<br><br>From-To    **2016 to the present** |

28.  **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☐ No
☑ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| **Jennifer F. Buchanan**<br>**c/o Susan M. Gaddy, Esq.**<br>**1156 Bowman Road, Suite 200**<br>**Mount Pleasant, SC 29464** | **2016** |

Debtor 1    **James Brooks Buchanan**                    Case number *(if known)*

---

| **Part 12:** | **Sign Below** |
| --- | --- |

**I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.**
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**/s/ James Brooks Buchanan**
**James Brooks Buchanan**                                    **Signature of Debtor 2**
**Signature of Debtor 1**

Date    **September 27, 2017**                              Date

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**EXHIBIT  6**



Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **James Brooks Buchanan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Employment status | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| | Occupation | Manager | |
| | Employer's name | V Bar V, LLC | |
| | Employer's address | 5032 Strozzi Way<br>Roseville, CA 95661 | |
| | How long employed there? | 12/10/2015 | |

### Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 32,266.96 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ N/A |
| 4. | Calculate gross Income. Add line 2 + line 3. | 4. | $ 32,266.96 | $ N/A |


Debtor 1  **James Brooks Buchanan**

Case number (*if known*) _____

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| **Copy line 4 here** | 4. | $  **32,266.96** | $  **N/A** |

5. **List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $  **11,450.00** | $  **N/A** |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $  **0.00** | $  **N/A** |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $  **542.00** | $  **N/A** |
| 5d. **Required repayments of retirement fund loans** | 5d. | $  **0.00** | $  **N/A** |
| 5e. **Insurance** | 5e. | $  **0.00** | $  **N/A** |
| 5f. **Domestic support obligations** | 5f. | $  **0.00** | $  **N/A** |
| 5g. **Union dues** | 5g. | $  **0.00** | $  **N/A** |
| 5h. **Other deductions.** Specify: _____ | 5h.+ | $  **0.00** + | $  **N/A** |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.　6.　$  **11,992.00**　$  **N/A**

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.　7.　$  **20,274.96**　$  **N/A**

8. **List all other income regularly received:**
   8a. **Net income from rental property and from operating a business, profession, or farm**
   Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.　8a.　$  **0.00**　$  **N/A**
   8b. **Interest and dividends**　8b.　$  **0.00**　$  **N/A**
   8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
   Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.　8c.　$  **0.00**　$  **N/A**
   8d. **Unemployment compensation**　8d.　$  **0.00**　$  **N/A**
   8e. **Social Security**　8e.　$  **0.00**　$  **N/A**
   8f. **Other government assistance that you regularly receive**
   Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
   Specify: _____　8f.　$  **0.00**　$  **N/A**
   8g. **Pension or retirement income**　8g.　$  **0.00**　$  **N/A**
   8h. **Other monthly income.** Specify: _____　8h.+　$  **0.00** +　$  **N/A**

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.　9.　$  **0.00**　$  **N/A**

10. **Calculate monthly income.** Add line 7 + line 9.　10.　$  **20,274.96** +　$  **N/A** =　$  **20,274.96**
    Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
    Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
    Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
    Specify: _____　11.　+$  **0.00**

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
    Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies　12.　$  **20,274.96**
    **Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
    ☐ No.
    ☑ Yes. Explain: | **Debtor's income is derived from a consulting contract that will end on February 23, 2018.** |

# EXHIBIT 7

| Fill in this information to identify your case and this filing: |
| --- |

| Debtor 1 | **James Brooks Buchanan** | | |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA | | |
| Case number | | | |

☐ Check if this is an
   amended filing

Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

1.1

**6400 Palmetto Drive #1**

Street address, if available, or other description

**Isle of Palms          SC      29451-0000**

City                          State      ZIP Code

**Charleston**

County

**What is the property?** Check all that apply

■ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$900,000.00** | **$450,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property
   (see instructions)

Debtor 1    **James Brooks Buchanan**    Case number *(if known)* _____

**If you own or have more than one, list here:**

1.2
**11 Seagrove Lane #B**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
■ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$480,000.00** | **$240,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Isle of Palms**    **SC**    **29451-0000**
City    State    ZIP Code

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

**Charleston**
County

Other information you wish to add about this item, such as local property identification number:

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................=>    **$690,000.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

3.1    Make:    **Dodge**
Model:    **1500 Van**
Year:    **1999**
Approximate mileage:    **160,000**
Other information:

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,500.00** | **$1,500.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................=>    **$1,500.00**

**Part 3:    Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

Debtor 1    **James Brooks Buchanan**                    Case number *(if known)*

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ■ No
   ☐ Yes.  Describe.....

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ■ No
   ☐ Yes.  Describe.....

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
   other collections, memorabilia, collectibles
   ■ No
   ☐ Yes.  Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ■ No
   ☐ Yes.  Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe.....

| Typical Man's Wardrobe | $400.00 |
|---|---|

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ■ No
    ☐ Yes.  Describe.....

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
    for Part 3. Write that number here ..........................................................................

    | $400.00 |
    |---|

| Part 4: | Describe Your Financial Assets |
|---|---|

Do you own or have any legal or equitable interest in any of the following?          **Current value of the
portion you own?**
Do not deduct secured
claims or exemptions.

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ■ No
    ☐ Yes...........................................................................................................

Debtor 1    **James Brooks Buchanan**    Case number (*if known*) _____

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes......................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking** | **Wells Fargo Bank Account #XXXXXX1628** | **$37.50** |
| 17.2. | **Cash Management** | **Fidelity Investments Account #XXX-XX4114** | **$3,587.23** |
| 17.3. | **Checking** | **Bank of America Account #XXXXXXXX8871** | **$350.06** |
| 17.4. | **Checking** | **Bank of America Account #XXXXXXXX0676** | **$51.17** |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes.................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **V Bar V, LLC** | **100%** | % | **$4,567.55** |
| **Buchanan Trust, LLC** | **25%** | % | **$6,000.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
    Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
■ Yes. List each account separately.
    Type of account:    Institution name:

| | | |
|---|---|---|
| **IRA** | **Traditional IRA Account #XXX-XX6275** **Administered by: Fidelity Investments** | **$15,881.42** |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ....................    Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes...........    Issuer name and description.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1    **James Brooks Buchanan**                                    Case number *(if known)*

---

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ■ No
    ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
              benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☐ No
    ■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Universal Life Insurance Policy #L102245110 Administered by: North American Company Face Amount: $300,000.00** | **Estate of Debtor** | **$2,140.59** |
| **Universal Life Insurance Policy #L012505400 Administered by: North American Company Face Amount: $750,000.00** | **Jennifer F. Buchanan** | **$8,463.33** |

---

Official Form 106A/B                          Schedule A/B: Property                                    page 5

Debtor 1      **James Brooks Buchanan**                                    Case number *(if known)* _____

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
someone has died.
■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here........................................................................................................

| |
|---|
| $41,078.85 |

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**
☐ No. Go to Part 6.
■ Yes.  Go to line 38.

**Current value of the portion you own?**
Do not deduct secured
claims or exemptions.

**38. Accounts receivable or commissions you already earned**
■ No
☐ Yes.  Describe.....

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
■ No
☐ Yes.  Describe.....

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
☐ No
■ Yes.  Describe.....

| Mac Book used in business - V Bar V, LLC | $1,000.00 |
|---|---|

**41. Inventory**
■ No
☐ Yes.  Describe.....

**42. Interests in partnerships or joint ventures**
■ No
☐ Yes.  Give specific information about them...................
Name of entity:                                   % of ownership:

Debtor 1    **James Brooks Buchanan**                     Case number *(if known)*

43. **Customer lists, mailing lists, or other compilations**
    ■ No.
    ☐ **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

        ■ No
        ☐ Yes.  Describe.....

44. **Any business-related property you did not already list**
    ■ No
    ☐ Yes. Give specific information.........

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here**..................................................................................................................    | **$1,000.00** |

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................    | **$0.00** |

| **Part 8:** | **List the Totals of Each Part of this Form** |

55. **Part 1: Total real estate, line 2**  .........................................................................................    | **$690,000.00** |
56. **Part 2: Total vehicles, line 5**    | **$1,500.00** |
57. **Part 3: Total personal and household items, line 15**    | **$400.00** |
58. **Part 4: Total financial assets, line 36**    | **$41,078.85** |
59. **Part 5: Total business-related property, line 45**    | **$1,000.00** |
60. **Part 6: Total farm- and fishing-related property, line 52**    | **$0.00** |
61. **Part 7: Total other property not listed, line 54**    +    | **$0.00** |

62. **Total personal property.** Add lines 56 through 61...    **$43,978.85**    Copy personal property total ▶    | **$43,978.85** |

63. **Total of all property on Schedule A/B.** Add line 55 + line 62    | **$733,978.85** |

# EXHIBIT 8

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **James Brooks Buchanan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J
# Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Describe Your Household

1.  **Is this a joint case?**

■ No. Go to line 2.
☐ Yes. **Does Debtor 2 live in a separate household?**

☐ No
☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**   ■ No

Do not list Debtor 1 and Debtor 2.    ☐ Yes.  Fill out this information for each dependent..............

Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**
■ No
☐ Yes

## Part 2:  Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J,* check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

| | | | |
|---|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4.  $ | 2,700.00 |
| | **If not included in line 4:** | | |
| 4a. | Real estate taxes | 4a.  $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b.  $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c.  $ | 200.00 |
| 4d. | Homeowner's association or condominium dues | 4d.  $ | 0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5.  $ | 0.00 |



Debtor 1    **James Brooks Buchanan**    Case number (if known)

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. | $ 180.00 |
| | 6b. | Water, sewer, garbage collection | 6b. | $ 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ 183.40 |
| | 6d. | Other. Specify: | 6d. | $ 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. | $ 1,000.00 |
| 8. | **Childcare and children's education costs** | | 8. | $ 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. | $ 325.00 |
| 10. | **Personal care products and services** | | 10. | $ 150.00 |
| 11. | **Medical and dental expenses** | | 11. | $ 250.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. | $ 475.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. | $ 300.00 |
| 14. | **Charitable contributions and religious donations** | | 14. | $ 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. | $ 147.00 |
| | 15b. | Health insurance | 15b. | $ 0.00 |
| | 15c. | Vehicle insurance | 15c. | $ 106.00 |
| | 15d. | Other insurance. Specify: **E/O Insurance Required for Employment** | 15d. | $ 437.33 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify:  **IRS 2016 Taxes** | | 16. | $ 350.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. | $ 0.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. | $ 0.00 |
| | 17c. | Other. Specify: | 17c. | $ 0.00 |
| | 17d. | Other. Specify: | 17d. | $ 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | | 18. | $ 7,104.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. | $ 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a. | Mortgages on other property | 20a. | $ 0.00 |
| | 20b. | Real estate taxes | 20b. | $ 1,270.41 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. | $ 38.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ 373.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. | $ 998.00 |
| 21. | **Other:** Specify:    **Legal Expenses** | | 21. | +$ 3,000.00 |
| | **MSA RE: Past Due Expenses on 11-B Seagrove Lane** | | | +$ 1,000.00 |
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. | Add lines 4 through 21. | $ | 20,587.14 |
| | 22b. | Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. | Add line 22a and 22b.  The result is your monthly expenses. | $ | 20,587.14 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ 20,274.96 |
| | 23b. | Copy your monthly expenses from line 22c above. | 23b. | -$ 20,587.14 |
| | 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ -312.18 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.

☐ Yes.    Explain here: