Alyssa B. Klausner (SBN 162253)
28215 Agoura Road, Suite 130
Agoura Hills, CA 91301
Telephone: (818) 721-4873
Facsimile: (818) 721-4987
Email: abk@aklausnerlaw.com

Attorneys for Movant and Secured Creditor,
Seagrove Horizontal Property Regime, Inc.

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| In re | **Case No. 17-26418** |
| JAMES BROOKS BUCHANAN, | (Chapter 7) |
| Debtor. | DC No.: AK-001 |
| SEAGROVE HORIZONTAL PROPERTY REGIME, INC. its assignees and/or successors in interest, | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ. IN SUPPORT THEREOF** |
| Movant, | |
| vs. | |
| JAMES BROOKS BUCHANAN, the Debtor; and ERIC J, NIMS, Chapter 7 Trustee, | Date: March 27, 2018 |
| Respondents. | Time: 9:30 a.m. |
| | Place: 501 I Street, 6th Floor, Courtroom 35, Sacramento, CA 95814 |

TO THE HONORABLE CHRISTOPHER M. KLEIN, THE DEBTOR AND COUNSEL OF RECORD, THE CHAPTER 7 TRUSTEE, THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:

## I.    INTRODUCTION

Secured Creditor and Movant SEAGROVE HORIZONTAL PROPERTY REGIME, INC. ("Movant" or the "Association"), a nonprofit corporation organized and existing pursuant to the laws of the State of South Carolina, and the homeowners association for a multi-unit residential

-1-

condominium development located at Seagrove Villas, Isle of Palms, South Carolina 29451 moves for an Order, pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(4), granting the Association's request for *in rem* relief from the automatic stay and immediately terminating the stay as to the Association with regard to the Debtor, the Debtor's co-owner/spouse/co-debtor (pursuant to 11 U.S.C. §1201(a) or § 1301(a)), and the Property in order to allow the Association and its agents to proceed under all applicable non-bankruptcy laws to enforce its remedies including, but not limited to, foreclosure upon and obtaining possession of the real property located at Unit B, Building II, Seagrove Horizontal Property Regime, Charleston County, South Carolina *also known as* 11 Seagrove Lane, Apartment B or 11B, Isle of Palms, South Carolina 29451, T.M.S. No.: 604-10-00-191 (hereinafter the "Property"). Said Motion is made on the grounds that: i) Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay because the Debtor and his co-owner/co-debtor/spouse have failed to pay and/or been delinquent in the payment of the homeowners assessments *for more than three (3) years* (since February, 2015), and the Property's owners including the Debtor and his co-owner/co-debtor/spouse have utterly failed to pay the post-petition homeowners assessments in violation of 11 U.S.C. § 523(a)(16); ii) The Debtor, in his Statement of Intentions surrendered the Property, and, pursuant to 11 U.S.C. § 362(d)(1)&(2), the Property is substantially overencumbered and underwater; and iii) The Debtor filed the instant bankruptcy case in order to delay and hinder creditors including the Association from collection of the delinquent amounts owed regarding the Property and the foreclosure of the Property.

The Property and the Property's owners including the Debtor and his co-owner/co-debtor/spouse have an obligation to pay the homeowners assessments to the Association pursuant to the Association's Governing Documents and South Carolina State law including South Carolina Code of Laws §§ 27-31-20, 27-31-30, 27-31-100, 27-31-150, 27-31-160, 27-31-170, 27- 31-190, 27-31-210 (a), and 11 U.S.C. § 523(a)(16). The homeowners assessments are used to maintain the Association and the complex including the Debtor's Property. The Debtor and his co-owner/co-debtor/spouse have failed to pay and/or been delinquent in the payment of the homeowners assessments *for more than three (3) years,* and following the Petition Date, the

1 Debtor and his co-owner/co-debtor/spouse continue to fail to pay the post-petition assessments,

2 all the while continuing to own, reside in and/or rent out the Property and to derive, use and

3 enjoy the benefits of the Property and the common area of the Association without making

4 his/her/their assessment payments to the Association, which the lien secures.

5 **II.    STATEMENT OF FACTS**

6       Movant and Secured Creditor SEAGROVE HORIZONTAL PROPERTY REGIME, INC.

7 (hereinafter the "Association"), a nonprofit corporation organized and existing laws of South

8 Carolina, and the homeowners association for a multi-unit residential development located at

9 Seagrove Villas, Isle of Palms, South Carolina 29451.  The Association is comprised of the

10 owners of the units/properties within the Association, including the Debtor and his co-

11 owner/co-debtor/spouse. Bylaws, Article I, Section A (Exhibit 2).

12       The Debtor James Brooks Buchanan (the "Debtor") and his co-owner/co-debtor/spouse

13 Jennifer F. Buchanan (hereinafter referred to as "co-debtor") acquired title to the real property

14 located at Unit B, Building II, Seagrove Horizontal Property Regime, Charleston County, South

15 Carolina *also known as* 11 Seagrove Lane, Apartment B or 11B, Isle of Palms, South Carolina

16 29451, T.M.S. No.: 604-10-00-191 (the "Property") via the Title to Real Estate recorded on

17 September 4, 2003 in Book U-468 at Page 666 in the Official Records of the Recorder's Office

18 (RMC Office) of/for County of Charleston, State of South Carolina.  A true and correct copy of

19 the Title to Real Estate (the "Deed") is attached hereto as **Exhibit 1** and incorporated herein by

20 reference.

21       The Property and the Property's owners, including the Debtor, are subject to the

22 Association's Governing Documents including without limitation that certain Master Deed of

23 Seagrove Horizontal Property Regime and the Bylaws of Seagrove Horizontal Property Regime

24 (collectively referred to as the "Governing Documents" or the "CC&Rs") recorded on June 21,

25 1979 in Book M-119 at Page 372 in the Official Records of the Recorder's Office (RMC

26 Office) of/for County of Charleston, State of South Carolina, which are equitable servitudes and

27 covenants that run with the land. *See* Governing Documents; S.C. Code §§ 27-31-100, 27-31-

28 150, 27-31-160, Cal.Civ.Code § 5975.  A true and correct copy of the referenced and relevant

portions of the Association's Governing Documents including the Master Deed and the Bylaws are attached hereto as **Exhibit 2** and incorporated herein by reference.[1]

Pursuant to the Association's Governing Documents, by virtue of the ownership of a unit/property at and within the Association, the Property's owners including the Debtor and his co-debtor are members of the Association, and covenant and agree and are obligated to abide by and comply with all of the terms and conditions of the Association's Master Deed and Bylaws and to pay assessments levied by the Association to meet the Association's expenses. Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article I, Section A, Article V, Sections D, E, F, G, H (Exh. 2); S.C. Code §§ 27-31-170, 27-31-190, 27-31-210 (a).

The obligation to pay the homeowners assessments is both the *in rem* obligation of the Property and the personal obligation of the Property's owners including the Debtor and his co-debtor. Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article V, Sections D, E, F, G, H (Exh. 2); S.C. Code §§ 27-31-170, 27- 31-190, 27-31-210 (a).  In particular, Article III, Section A of the Master Deed provides, in relevant part, that:

> "The Owner shall bear in proportion to their respective interests in the Common Elements the following expenses ("Common Expenses"): 1. Expenses of administration, maintenance, repair, or replacement of the Common Elements; 2. Expenses declared to be Common Expenses by the Act, the Master Deed or the Bylaws; 3. Any Expenses (including contributions to reserve funds) agreed upon as Common Expenses or lawfully assessed against the Owners as a group by the Association; 4. Insurance Premiums paid by the Council in accordance with the provisions of this Master Deed and the Bylaws. . . . with respect to those Dwellings which are completed and ready for occupancy, said Common Expenses shall be apportioned among such Dwellings . . . and shall be borne by the Owners of such Dwellings. . . ." Governing Documents, Master Deed, Article III, Section A (Exh. 2).

Moreover, Article III, Section G of the Bylaws provides, in relevant part, that:

> "Owners shall be personally liable for all assessments and shall pay the same promptly when due." Governing Documents, Bylaws, Article III, Section G (Exhibit 2); *See also* S.C. Code § 27-31-190.

---

[1] Additionally, for the Court's convenience, a true and correct copy of the relevant and cited portions of the South Carolina Code of Laws are attached hereto as **Exhibit 8**.

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

Further, Article III, Section E of the Master Deed provides, in relevant part, that:

> "All sums assessed by the Association but unpaid for the share of the Common Expenses chargeable to any Dwelling shall constitute a lien on such Dwelling prior and superior to all other liens except only (i) tax liens on the Dwelling in favor of any assessing unit, and (ii) mortgage and other liens, duly recorded, encumbering the Dwelling. Such lien may be foreclosed by suit by the Manager or the Board of Directors, acting on behalf of the Association, in like manner as a mortgage of real property." Governing Documents, Master Deed, Article III, Section E (Exhibit 2); *See also* S.C. Code § 27-31-210 (a).

Additionally, the obligation to pay assessments cannot be offset or waived. In that regard, Article III, Section C of the Master Deed provides, in relevant part, that:

> "No Owner may exempt himself from liability for his contribution towards the Common Expenses by waiver of the use or enjoyment of the Common Elements or by abandonment of his Dwelling." Governing Documents, Master Deed, Article III, Section C (Exhibit 2).; *See also* S.C. Code § 27-31-190.

Assessments are due on the first day of each month, and are delinquent if not paid within ten (10) days after they are due, in which case a late fee of five ($5) dollars *plus* one (1%) percent of the assessment per month from the date when due is imposed. Governing Documents, Bylaws, Article III, Section H (Exhibit 2); *See also* S.C. Code § 27-31-190. Additionally, the Association is entitled to recover from the Property and/or the delinquent Property's owners all reasonable costs of collection, including attorney's fees. Governing Documents, Bylaws, Article III, Section G (Exhibit 2). While statements were sent to the Debtor and his co-debtor regarding the amounts owed to the Association as a courtesy, the Association was not required to give the Debtor and/or his co-debtor a statement, payment coupon, invoice, or other comparable document.

The Association's Governing Documents authorize the Association to collect delinquent assessments, late charges, and collection costs including attorneys' fees, and to record a lien against a homeowner's property and foreclose on that lien to collect same, and/or file a lawsuit against the Debtor and his co-debtor to collect said unpaid assessments and related charges. Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article V, Sections D, E, F, G, H (Exhibit 2); S.C. Code § 27-31-210 (a).

///

Dating back to February, 2015, and continuing thereafter, the Property and its owners including the Debtor and his co-debtor failed to pay and/or were delinquent in the payment of the homeowners assessments for the Property. As there were outstanding assessments due, the Association recorded the Notice of Lien on June 4, 2015 in Book 0480 at Page 715 in the Official Records of the Recorder's Office (RMC Office) of/for County of Charleston, State of South Carolina (the "Lien"). Thus, the Association is a holder of a secured claim and lien recorded against the Property in which the Debtor and his co-debtor claim an interest. A true and correct copy of the Notice of Lien is attached hereto as **Exhibit 3** and incorporated herein by reference.

The Property and the Property's owners including the Debtor and his co-debtor have a long history of failing to pay the homeowners assessments owed to the Association. In addition to the pre-petition delinquency since February, 2015, the Debtor and his co-debtor have utterly failed to pay the post-petition homeowners assessments for last five (5+) months since the bankruptcy was filed in September, 2017. Exhs. 4, 5. The Property and the Debtor and his co-debtor currently owe the Association *at least* $31,819.25 through February 1, 2018, of which approximately $29,833.65 are the delinquent pre-petition assessment amounts, and *at least* $1,985.60 are the post-petition assessment amounts (through February 1, 2018 excluding some late fees, and the post-petition legal fees and costs that are also due), which remain unpaid. Exhibits 4, 5; Klausner Decl. Further post-petition assessments, including the current regular assessment of $390, continue to accrue each month, which if not timely paid, will incur additional late fees of at least $8.90 ($5 + 1% of the delinquent assessments) per month and collection costs, including legal fees and costs. A true and correct copy of the Association's account statement/ledger is attached hereto as **Exhibit 4** and incorporated herein by reference.

Having not received payment of the outstanding delinquent assessments following the recordation of the Association's Lien, the Association filed a State Court action in the County of Charleston, State of South Carolina (entitled *Seagrove Horizontal Property Regime v. James B. Buchanan, et al.*, Case Number: 16-CP-10-6865) against the Debtor and his co-owner/co-debtor/spouse seeking to foreclose on the Property. The Debtor and his co-debtor defaulted on

July 31, 2017. And, following their default, the State Court, on September 27, 2017, issued the Consent Master's Decree of Foreclosure and Sale in favor of the Association wherein the Court granted the Association the judgment of foreclosure on its Lien. A true and correct copy of the Consent Master's Decree of Foreclosure and Sale is attached hereto as **Exhibit 5** and incorporated herein by reference.

Following the issuance of the Consent Master's Decree of Foreclosure and Sale, the Debtor filed the instant Chapter 7 bankruptcy petition on September 27, 2017 (United States Bankruptcy Court – Eastern District of California Case Number: 17-26418). In his Petition, the Debtor surrendered the Property. Statement of Intention, Docket # 1 (Exhibit 6). A true and correct copy of the bankruptcy docket and the relevant portions of the Debtor's Schedules including Schedules A, D, E and H and the Statement of Intention are attached hereto as **Exhibit 6** and incorporated herein by reference.

Following the Petition Date, the Debtor and his co-debtor continue to own, have possession of and reside in and/or rent out the Property. However, following the Petition Date, the Debtor and his co-debtor have utterly failed to pay the post-petition homeowners assessment amounts (and have failed to pay at least five (5) months of post-petition assessments payments since September 27, 2017, in addition to the pre-petition delinquency dating back to February, 2015).

According to his Schedules, the Debtor claims that fair market value of the Property is only $480,000, and the first lender Carrington is owed at least $644,027, the second lender Bank of America is owed at least $37,960, and the County Assessor is owed $24,000. Exhibit 6; Docket Number 1. Further, the Association is owed the sum of at least $31,819.25 (through February 1, 2018 not including some late fees and post-petition legal fees and costs that are also due), which continues to accrue. Exhibits 4, 5. According to the Debtor, while the fair market value of the Property is approximately $480,000, the Property is encumbered for approximately $737,806.25 including the lender's first and second mortgages, the property taxes and the secured amounts owed to the Association. *See* Exhibits 2, 3, 4, 5, 6. Thus, the Property is substantial underwater by at least $(-257,806.25), and the value of the Property is worth

1   substantially less than the amount of the secured encumbrances.

2          As set forth in the Declaration of Kim Pate, the property manager of Seagrove Horizontal

3   Property Regime, Inc., the failure and continued failure of the Debtor and his co-

4   owner/spouse/co-debtor to pay the assessment obligations creates a burden on this Association

5   and its other members who must share in the cost of their failure to pay their assessments. The

6   homeowners assessments are used by the Association for, amongst other things, maintenance

7   and repair of the Project, including the Property and the Association common areas. Following

8   the bankruptcy petition, the Debtor and his co-debtor continue to have legal ownership and

9   possession of the Property, reside in and/or rent out the Property, continue to use the common

10  area facilities at the Association, continue to derive the benefits of the Property and the common

11  area of the Association, and continue to take advantage of the utilities and other services for

12  which the Association must pay, but for which the Debtor and his co-debtor are not contributing

13  as a result of the delinquent assessments.  The on-going failure of the Debtor and his co-debtor

14  to pay assessments places the Association and its members in a precarious position.

15         A review of the facts set forth in the Declarations filed in support of this Motion and the

16  documentary evidence submitted herewith demonstrate that the Debtor's on-going bankruptcy is

17  preventing the Association from proceeding with the foreclosure on the Property.  Assessments

18  have been unpaid/delinquent on this Property *for more than three (3) years, since February,*

19  *2015.*

20         The failure of the Debtor and his co-debtor to make post-petition homeowners assessment

21  payments to the Association, while owning, residing in and/or renting the Property, violates 11

22  U.S.C. § 523(a)(16).  If the requested relief is not granted, the Association will be prejudiced in

23  its ability to collect the delinquent assessments from the Debtor and his co-debtor and the

24  Property, and the Association will be prejudiced in obtaining compliance with the Association's

25  Governing Documents if the stay is not lifted.

26         Prior to filing this Motion, the Association via its attorney contacted the Debtor's

27  Attorneys Edward A. Smith and Stephan Brown numerous times via email and telephone

28  regarding the Debtor's non-payment of the post-petition assessments in an effort to resolve

same including, without limitation, on February 19, 2018, February 20, 2018 and February 26, 2018. A true and correct copy of the email dated February 26, 2018 sent to Debtor's Attorneys is attached hereto as **Exhibit 7** and incorporated herein by reference. Accordingly, having not received a definitive response nor the payment of the assessments including the post-petition assessments, the Association had no choice but to prepare the instant Motion for Relief from the Automatic Stay.

The Association respectfully requests that this Court issue an Order granting the Association's request for *in rem* relief from the automatic stay and immediately terminating the stay as to the Association with regard to the Debtor, his co-debtor and the Property and annulling it as to the Association retroactively to the date of the bankruptcy filing in order to allow the Association and its agents to proceed under all applicable non-bankruptcy laws to enforce its remedies including, but not limited to, foreclosure upon and obtaining possession of the Property, and/or commencing and/or continuing legal action as necessary against the Debtor and his co-debtor regarding same in order to collect the delinquent assessments, and/or foreclose on the property and obtain possession of same. If relief from stay is not granted, the Association respectfully requests that the Court order adequate protection. The Association further requests that any order entered in this bankruptcy be effective in any subsequent bankruptcy filed by this Debtor, his co-debtor and affecting the Property. Moreover, the Association requests waiver of the 14-day stay as provided in FRBP 4001(a)(3).

## III. ARGUMENT

### A. RELIEF FROM THE AUTOMATIC STAY SHOULD BE GRANTED ON THE GROUNDS THAT THE DEBTOR AND HIS CO-DEBTOR, WHO CONTINUE TO OWN THE PROPERTY, HAVE FAILED PAY THE POST-PETITION ASSESSMENTS IN VIOLATION OF 11 U.S.C. § 523(a)(16)

The Association seeks relief from the automatic stay afforded under 11 USC § 362 of the U.S. Bankruptcy Code on the grounds that the Debtor and his co-debtor have failed to make his/her/their post-petition homeowners' assessment payments to the Association in violation of 11 U.S.C. § 523(a)(16), while the Debtor and his co-debtor continue to own the Property. The Debtor and his co-debtor own, reside in and/or rent out the Property and benefit from the

common area facilities at the Association, and benefits from the other services for which the Association must pay, but for which the Debtor and his co-debtor have not contributed by payment of his/her/their assessments due to the Association pursuant to the Governing Documents.

Not only has the Debtor and his co-debtor failed to pay the delinquent homeowners assessments in the amount of *at least* $31,819.25 (as of February 1, 2018 excluding some late fees and the post-petition legal fees and costs that are also due) for unpaid homeowners assessments and related charges for late fees, interest and collection costs, to the Secured Creditor Association, of which at least $29,833.65 are for the delinquent pre-petition assessments and at least $1,985.60 are for the delinquent post-petition assessments, said post-petition assessments and related collection costs and fees due the Association continue to accrue each month. The continued failure of the Debtor and his co-debtor to pay the assessment obligations creates an undue burden on the Association and its other members who must share in the cost of the Debtor's and his co-debtor's failure to pay the assessments.

11 USC § 523 (a), Subsection (16) exempts post-petition assessments from discharge regardless of the type of bankruptcy the Debtor files. With respect to the Exceptions to Discharge, 11 USC § 523 (a), Subsection (16) clearly provides that:

> "(a) **A discharge** under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title **does not discharge an individual debtor from, any debt** –
>     (16) **for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership**, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case". 11 USC § 523(a)(16) [Emphasis added.]

Even though the Debtor and his co-debtor have had and continue to have legal, equitable and/or possessory ownership of the Property, and own and reside in and/or rent out the Property, as well as benefit from use and enjoyment of the Association's common areas, the Debtor and his co-debtor have not paid the post-petition homeowners assessments (in addition

to the pre-petition delinquency). Additionally, the Debtor and his co-debtor have forced and continue to force the Association to incur, amongst other things, additional costs for collection fees and attorneys' fees as a result of his/her/its/their failure to pay the assessments and prepare this Motion.

In the case of *Foster v. Double R Ranch Association* (In Re Foster), 2010 DJDAR 13025 (9th Cir. July 19, 2010) where the Debtor tried to avoid the payment of the homeowners assessments in a Chapter 13 case, the Court, finding in favor of the Association, stated, in relevant part, as follows:

> "[W]e hold, as a matter of law, debtor's personal liability for HOA dues continues postpetition as long as he maintains his legal, equitable or possessory interest in the property and is unaffected by his discharge. In essence, the "running" covenant rule in this case boils down to one of **"you stay, you pay"**. . . ." [Emphasis added].

The *Foster* Court's statement, **"you stay, you pay"** with regard to the Debtor's obligation to pay the post-petition assessments while the Debtor and his co-debtor continue to own the Property, bares repeating. Not only have the Debtor and his co-debtor been delinquent in the payment of the assessments owed since February, 2015, the Debtor and his co-debtor have utterly failed to pay the post-petition assessments amounts due since the Petition Date, and no payment has been received by the Association from the Debtor and his co-debtor for more than two (2) years. Exhibits 4, 5.

Automatic stay provisions in the Bankruptcy Code were not intended to be used as a weapon or club to reduce creditors into submission with continued passage of time while no payments are made to them or to be a permanent refuge for a financially distressed Debtor. The bankruptcy laws were intended only to give a debtor a breathing spell from his creditors and to afford him reasonable time to repay his debts or develop a reorganization plan. *In re Gaslight Village, Inc.* 8 B.R. 866 (Bk. Conn. 1981).

In the *In re Kinney Kar Leasing, Inc.* 5 B.R. 405 (C.D. Cal. 1980) case, the Court held:

> "No one questions the right of a debtor to a fair chance at rehabilitation. On the other hand, that right is not so pervasive as to permit the destruction of economic rights equally entitled to the sanctioned protection of law. The cited provisions of the Code are an effort to balance these conflicting interests, to grant to the debtor the right to continued enjoyment and exploitation of property and assets upon which rehabilitation depends, not at the expense of secured creditors, but on terms which

protect secured creditors in the realization of the value of their interests in such property and assets."

In the case of *In re Fernandez* 212 B.R. 361 (Bankr. C.D. Cal. 1997), the Court enforced an *in rem* relief from stay order from a prior proceeding and upheld a bankruptcy court's ability to use its equitable powers under 11 U.S.C. § 105(a) to "prevent abuse" and to "preserve the integrity of the bankruptcy process."

A creditor is entitled to relief from the automatic stay if the debtor files bankruptcy in bad faith. *In Re Duvar Apt., Inc.* 97 DJ DAR 6109 (9th Cir. BAP, May 14, 1997); *In re Huerta*, 137 B.R. 356 (Bkrtcy C.D. Cal. 1992). In the landmark case of *In re Fast Food Properties, Ltd. No. 1,* 5 B.R. 539 (C.D. Cal. 1980), the Court held that a case filed solely for the purpose of frustrating the enforcement of the power of sale provisions in a deed of trust was subject to dismissal. The Court stated: "Under the Bankruptcy Act of 1898, the Bankruptcy Court, without express statutory authority, dismissed Bankruptcy cases which were filed improperly for an improper purpose." The principle in that case applies equally to attempts to avoid the power of sale in the lien remedy afforded to homeowners associations for collection of delinquent assessments pursuant to the Association's CC&Rs. Accordingly, relief, including *in rem* relief [2], from the automatic stay afforded by the Court should be granted.

The Association respectfully requests that the Court should issue an Order granting the Association relief, including *in rem* relief, from the automatic stay pursuant to 11 U.S.C. § 362(d)(1)&(2) and 11 U.S.C. § 362(d)(4), and immediately terminating the stay as to the Association with respect to the Debtor and his co-debtor and the Property and annulling the stay to the date of the bankruptcy petition in order to allow the Association and its agents to proceed under all applicable non-bankruptcy laws to enforce its remedies including, but not limited to, foreclosure upon the Property and obtaining possession of the Property, and/or commencing and/continuing legal action against the Debtor and his co-debtor regarding same in order to foreclose on the property to collect the delinquent assessments and obtain possession of same.

---

[2]/ The Association requests that the Court issue an *in rem* Order, pursuant to 11 U.S.C. § 362(d)(4), whereby the order is binding in any other case under this title purporting to affect the Property filed not later than two (2) years after the date of the entry of the order by the court if recorded in compliance with applicable state laws governing notices of interests or liens in real property.

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

## B.  THE DEBTOR SURRENDERED THE PROPERTY THAT IS OVERENCUMBERED AND SUBSTANTIALLY UNDERWATER.

In the Statement of Intention portion of his Petition, the Debtor surrendered the Property. Petition, Statement of Intention, Docket # 1 (Exhibit 6).

Further, the Property is substantially underwater. As set forth in the Debtor's Schedules, the Property is encumbered for at least $737,806.25 including the first lender encumbrance of at least $644,027, the second lender encumbrance of at least $37,960, the property taxes of at least $24,000, and the amounts owed to the Association of at least $31,819.25 (through February 1, 2018 not including some late fees and post-petition legal fees and costs that are also due). *See* Exhibits 3, 4, 5, 6; Pate and Klausner Decls.  According to the Debtor in his Schedules, the fair market value of the Property is approximately $480,000. Exhibit 6. Thus, the Property is substantial underwater by at least $(-257,806.25), and the value of the Property is worth substantially less than the amount of the secured encumbrances.  And, the Debtor does not have equity in the Property and pursuant to 11 USC § 362(d)(2)(B), the Property is not necessary for an effective reorganization, and the Association's interest is not protected by an adequate equity cushion.

## IV.  CONCLUSION

For the reasons set forth above and in the concurrently filed Declarations, the Association respectfully requests and good cause exists for the Court to issue an *in rem* Order granting the Association's request for relief from the automatic stay and immediately terminating the stay as to the Association with regard to the Property and the Debtor and his co-owner/spouse/co-debtor and annulling the stay to the date of the bankruptcy in order to allow the Association and its agents to proceed under all applicable non-bankruptcy laws to enforce its remedies including, but not limited to, foreclosure upon and obtaining possession of the Property, and/or commencing and/or continuing legal action against the Debtor and his co-debtor/co-owner/spouse regarding same in order to collect the delinquent assessments, and/or foreclose on the property and obtain possession of same.  If relief from stay is not granted, the Association respectfully requests that the Court order adequate protection.  The Association further requests

1  that any order entered in this Bankruptcy be effective in any subsequent bankruptcy filed by this

2  Debtor, or affecting the Property.  Moreover, the Association requests waiver of the 14-day stay

3  as provided in FRBP 4001(a)(3).

4                                Respectfully submitted,

5  Dated: February 28, 2018

6                        By: _____
                                Alyssa B. Klausner, Esq.
7                        Attorneys for Movant and Secured Creditor, SEAGROVE
                         HORIZONTAL PROPERTY REGIME, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL
PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

## DECLARATION OF KIM PATE

I, Kim Pate, hereby declare as follows:

1.     I am the Property Manager of Movant SEAGROVE HORIZONTAL PROPERTY REGIME, INC. (hereinafter the "Association"), a secured creditor of the Debtor and his co-owner/co-debtor/spouse. I am over 18 years of age. Except as to those matters alleged on information and belief, I know the following facts to be true, and if called upon to do so, I could and would competently testify to the truth of the following matters under oath. As to the matters alleged on information and belief, I believe them to be true, and if called upon to testify about the facts asserted herein, I could and would testify thereto.

2.     I am familiar with the Association's books, records and accounts as they relate to, Debtor herein, James Brooks Buchanan (the "Debtor") and his co-owner/spouse/co-debtor Jennifer F. Buchanan (hereinafter referred to as the "co-debtor") and the Property. I am one of the custodians of the books, records and files of the Association, including those books, records and files that pertain to the obligation of the Debtor, his co-debtor, and the Property to pay regular and special assessments and related costs and charges to the Association relating to the Property at the Association owned by the Debtor and his-co-debtor. I have worked on books, records and files and as to the following facts, I know them to be true of my own personal knowledge or I have gained knowledge of them from the business records of the Association on behalf of the Association, which were made at or about the time of the events recorded and which are maintained in the ordinary course of the Association's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of the Association by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.     The real property that is the subject of this Motion is Unit B, Building II, Seagrove Horizontal Property Regime, Charleston County, South Carolina *also known as* 11 Seagrove Lane, Apartment B or 11B, Isle of Palms, South Carolina 29451, T.M.S. No.: 604-10-00-191

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

(the "Property").

4.   Movant and Secured Creditor SEAGROVE HORIZONTAL PROPERTY REGIME, INC. (hereinafter the "Association"), is a nonprofit corporation organized and existing laws of South Carolina, and the homeowners association for a multi-unit residential development located at Seagrove Villas, Isle of Palms, South Carolina 29451. The Association is comprised of the owners of the units/properties within the Association, including the Debtor and his co-owner/co-debtor/spouse. Governing Documents, Bylaws, Article I, Section A (Exhibit 2).

5.   The Debtor James Brooks Buchanan (the "Debtor") and his co-owner/co-debtor/spouse Jennifer F. Buchanan (the co-debtor") acquired title to the Property via the Title to Real Estate recorded on September 4, 2003 in Book U-468 at Page 666 in the Official Records of the Recorder's Office (RMC Office) of/for County of Charleston, State of South Carolina.  A true and correct copy of the Title to Real Estate (the "Deed") is attached hereto as **Exhibit 1** and incorporated herein by reference.

6.   The Property and the Property's owners, including the Debtor, are subject to the Association's Governing Documents including without limitation that certain Master Deed of Seagrove Horizontal Property Regime and the Bylaws of Seagrove Horizontal Property Regime (collectively referred to as the "Governing Documents" or the "CC&Rs") recorded on June 21, 1979 in Book M-119 at Page 372 in the Official Records of the Recorder's Office (RMC Office) of/for County of Charleston, State of South Carolina, which are equitable servitudes and covenants that run with the land. *See* Governing Documents; S.C. Code §§ 27-31-100, 27-31-150, 27-31-160.   A true and correct copy of the referenced and relevant portions of the Association's Governing Documents including the Master Deed and the Bylaws are attached hereto as **Exhibit 2** and incorporated herein by reference.

7.   Pursuant to the Association's Governing Documents, by virtue of the ownership of a unit/property at and within the Association, the Property's owners including the Debtor and his co-debtor are members of the Association, and covenant and agree and are obligated to abide by and comply with all of the terms and conditions of the Association's Master Deed and Bylaws and to pay assessments levied by the Association to meet the Association's expenses.

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article I, Section A, Article V, Sections D, E, F, G, H (Exhibit 2); S.C. Code §§ 27-31-170, 27- 31-190, 27-31-210 (a).

8. The obligation to pay the homeowners assessments is both the *in rem* obligation of the Property and the personal obligation of the Property's owners including the Debtor and his co-debtor. Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article V, Sections D, E, F, G, H (Exh. 2); S.C. Code §§ 27-31-170, 27- 31-190, 27-31-210 (a). Additionally, the obligation to pay assessments cannot be offset or waived. Governing Documents, Master Deed, Article III, Section C (Exhibit 2).; *See also* S.C. Code § 27-31-190.

9. Assessments are due on the first day of each month, and are delinquent if not paid within ten (10) days after they are due, in which case a late fee of five ($5) dollars *plus* one (1%) percent of the assessment per month from the date when due is imposed. Governing Documents, Bylaws, Article III, Section H (Exhibit 2); *See also* S.C. Code § 27-31-190. Additionally, the Association is entitled to recover from the Property and/or the delinquent Property's owners all reasonable costs of collection, including attorney's fees. Governing Documents, Bylaws, Article III, Section G (Exhibit 2).

10. While statements were sent to the Debtor and his co-debtor regarding the amounts owed to the Association as a courtesy, the Association was not required to give the Debtor and/or his co-debtor a statement, payment coupon, invoice, or other comparable document.

11. The Association's Governing Documents authorize the Association to collect delinquent assessments, late charges, and collection costs including attorneys' fees, and to record a lien against a homeowner's property and foreclose on that lien to collect same, and/or file a lawsuit against the Debtor and his co-debtor to collect said unpaid assessments and related charges. Governing Documents, Master Deed, Article III, Sections A, C, E, Article IX, Sections A, B, Bylaws, Article V, Sections D, E, F, G, H (Exh. 2); S.C. Code § 27-31-210 (a).

12. Dating back to February, 2015, and continuing thereafter, the Property and its owners including the Debtor and his co-debtor failed to pay and/or were delinquent in the

payment of the homeowners assessments for the Property. As there were outstanding assessments due, the Association recorded the Notice of Lien on June 4, 2015 in Book 0480 at Page 715 in the Official Records of the Recorder's Office (RMC Office) of/for County of Charleston, State of South Carolina (the "Lien"). Thus, the Association is a holder of a secured claim and lien recorded against the Property in which the Debtor and his co-debtor claim an interest. A true and correct copy of the Notice of Lien is attached hereto as **Exhibit 3** and incorporated herein by reference.

13.    The Property and the Property's owners including the Debtor and his co-debtor have a long history of failing to pay the homeowners assessments owed to the Association. In addition to the pre-petition delinquency since February, 2015, the Debtor and his co-debtor have utterly failed to pay the post-petition homeowners assessments for last five (5+) months since the bankruptcy was filed in September, 2017. Exhs. 4, 5. The Property and the Debtor and his co-debtor currently owe the Association *at least* $31,819.25 through February 1, 2018, of which approximately $29,833.65 are the delinquent pre-petition assessment amounts, and *at least* $1,985.60 are the post-petition assessment amounts (through February 1, 2018 excluding some late fees, and the post-petition legal fees and costs that are also due), which remain unpaid. Exhibits 4, 5; Klausner Decl. Further post-petition assessments, including the current regular assessment of $390, continue to accrue each month, which if not timely paid, will incur additional late fees of at least $8.90 ($5 + 1% of the delinquent assessments) per month and collection costs, including legal fees and costs. A true and correct copy of the Association's account statement/ledger is attached hereto as **Exhibit 4** and incorporated herein by reference.

14.    Having not received payment of the outstanding delinquent assessments following the recordation of the Association's Lien, the Association filed a State Court action in the County of Charleston, State of South Carolina (entitled *Seagrove Horizontal Property Regime v. James B. Buchanan, et al.*, Case Number: 16-CP-10-6865) against the Debtor and his co-owner/co-debtor/spouse seeking to foreclose on the Property. The Debtor and his co-debtor defaulted on July 31, 2017. And, following their default, the State Court, on September 27, 2017, issued the Consent Master's Decree of Foreclosure and Sale in favor of the Association

wherein the Court granted the Association the judgment of foreclosure on its Lien. A true and correct copy of the Consent Master's Decree of Foreclosure and Sale is attached hereto as **Exhibit 5** and incorporated herein by reference.

15.  Following the issuance of the Consent Master's Decree of Foreclosure and Sale, the Debtor filed the instant Chapter 7 bankruptcy petition on September 27, 2017 (United States Bankruptcy Court – Eastern District of California Case Number: 17-26418). In his Petition, the Debtor surrendered the Property. Statement of Intention; Docket No.1 (Exhibit 6). A true and correct copy of the bankruptcy docket and the relevant portions of the Debtor's Schedules including Schedules A, D, E and H and the Statement of Intention are attached hereto as **Exhibit 6** and incorporated herein by reference.

16.  Following the Petition Date, the Debtor and his co-debtor continue to own, have possession of and reside in and/or rent out the Property. However, following the Petition Date, the Debtor and his co-debtor have utterly failed to pay the post-petition homeowners assessment amounts (and have failed to pay at least five (5) months of post-petition assessments payments since September 27, 2017, in addition to the pre-petition delinquency dating back to February, 2015).

17.  According to his Schedules, the Debtor claims that fair market value of the Property is only $480,000, and the first lender Carrington is owed at least $644,027, the second lender Bank of America is owed at least $37,960, and the County Assessor is owed $24,000. Exhibit 6; Docket Number 1. Further, the Association is owed the sum of at least $31,819.25 (through February 1, 2018 not including some late fees and post-petition legal fees and costs that are also due), which continues to accrue. Exhibits 4, 5. According to the Debtor, while the fair market value of the Property is approximately $480,000, the Property is encumbered for approximately $737,806.25 including the lender's first and second mortgages, the property taxes and the secured amounts owed to the Association. *See* Exhibits 2, 3, 4, 5, 6. Thus, the Property is substantial underwater by at least $(-257,806.25), and the value of the Property is worth substantially less than the amount of the secured encumbrances.

/ / /

18. The failure and continued failure of the Debtor and his co-debtor to pay the assessment obligations creates a burden on this Association and its other members who must share in the cost of their failure to pay their assessments. The homeowners assessments are used by the Association for, amongst other things, maintenance and repair of the Project, including the Property and the Association common areas. Following the bankruptcy petition, the Debtor and his co-debtor continue to have legal ownership and possession of the Property, reside in and/or rent out the Property, continue to use the common area facilities at the Association, continue to derive the benefits of the Property and the common area of the Association, and continue to take advantage of the utilities and other services for which the Association must pay, but for which the Debtor and his co-debtor are not contributing as a result of the delinquent assessments. The on-going failure of the Debtor and his co-debtor to pay assessments places the Association and its members in a precarious position.

19. For the Court's convenience, a true and correct copy of the relevant and cited portions of the South Carolina Code of Laws are attached hereto as **Exhibit 8.**

I declare under penalty of perjury under the laws of the State of South Carolina and the United States of America that the foregoing is true and correct and that this declaration was executed on this 28th day of February, 2018 at _Charleston_, South Carolina.



_____
Kim Pate, Property Manager of Seagrove
Horizontal Property Regime, Inc.

MARK SUZANNE WILSON
NOTARY PUBLIC
MY COMMISSION EXPIRES
11/22/2021
SOUTH CAROLINA

2/28/18

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL
PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

## DECLARATION OF ALYSSA B. KLAUSNER

I, Alyssa B. Klausner, declare as follows:

1. I am an attorney at law, duly licensed to practice before all the courts in the State of California. I am counsel of record for Secured Creditor Seagrove Horizontal Property Regime, Inc. (hereinafter the "Association"), a secured creditor of the Debtor herein and his co-owner/spouse/co-debtor. I know the following facts to be true of my own personal knowledge, except as to those matters alleged on the basis of information and belief, and as to those matters, I believe them to be true. If called upon to do so, I could and would testify to the truth of the following matters under oath.

2. The Debtor filed the instant Chapter 7 bankruptcy petition on September 27, 2017 (United States Bankruptcy Court – Eastern District of California Case Number: 17-26418). In his Petition, the Debtor surrendered the Property. Statement of Intention; Docket # 1 (Exhibit 6). A true and correct copy of the bankruptcy docket and the relevant portions of the Debtor's Schedules including Schedules A, D, E and H and the Statement of Intention are attached hereto and the Declaration of Kim Pate as **Exhibit 6** and incorporated herein by reference.

3. I, on behalf of the Association, contacted the Debtor's Attorneys Edward A. Smith and Stephan Brown regarding the Debtor's non-payment of the post-petition assessments numerous times via email and telephone including, February 19, 2018, February 20, 2018 and February 26, 2018. A true and correct copy of the email dated February 26, 2018 that I sent to Debtor's Attorneys is attached hereto as **Exhibit 7**. Having not received a response from the Debtor's Attorneys nor the payment of the post-petition assessments, the Association had no choice but to prepare the instant Motion for Relief from the Automatic Stay.

4. The Association has/will incur legal fees and costs with regard to the bankruptcy of the Debtor and the Debtor's on-going delinquency including the preparation of the Motion for Relief from the Automatic Stay.

5. I have been practicing for over 25 years, and my time is billed at $350.00 per hour. These fees are reasonable. I practice in the area of community association law, and I am one of the few attorneys in the State of California who deal with bankruptcy cases for homeowners

associations. My hourly rate is no greater, and is actually less than, the usual and customary rates that are charged by association law attorneys of comparable experience in California. The time spent and amount I have and/or will bill is reasonable, especially in light of the circumstance of this matter, including the on-going failure of the Debtor to pay the delinquent assessments while continuing to derive the benefits and use of Association's Common Areas.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 28th day of February, 2018 at Agoura Hills, California.

Alyssa B. Klausner

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL
PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 28215 Agoura Road, Suite 130, Agoura Hills, California 91301.

A true and correct copy of the foregoing document described as **MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATEAND ALYSSA B. KLAUSNER, ESQ. IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 28, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

　　Edward A. Smith (Debtor's Atty) – Email: edward@thebklawoffice.com

II. **SERVED BY ☑ U.S. MAIL OR ☐ OVERNIGHT MAIL** (indicate method for each person or entity served): On February 28, 2018, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

　　Debtor's Attorney - Edward A. Smith, 3300 Douglas Blvd., Suite 100, Roseville, CA 95661
　　Debtor - James Brooks Buchanan, 5032 Strozzi, Roseville, CA 95661
　　Co-Owner/Spouse - Jennifer Buchanan c/o Susan M. Gaddy, Esq., 1156 Bowman Road, Suite 200, Mount Pleasant, SC 29464 and c/o Nicholas Lazzarini, 770 L. St., # 950, Sacramento, CA 95814
　　*Courtesy Copy* – United States Bankruptcy Court –Eastern District of CA (Sacramento Division), Judge Christopher Klein, 501 I Street, 6th Floor, Courtroom 35, Sacramento, California 95814
　　Trustee- Eric J. Nims, PO Box 873, Linden, CA 95236
　　US Trustee, 501 I Street, Room 7-500, Sacramento, CA 95814
　　Bank of America – Elizabeth C. Hehir, McGuire Woods,1800 Century Park East, 8th Floor, Los Angeles, CA 90067
　　Carrington Mortgage Service, LLC, PO Box 3489, Anaheim, CA 92803
　　Charleston County Assessor, PO Box 427, Charleston, SC 29402
　　Charleston County Revenue Collections, 4045 Bridgeview Dr., North Charleston, SC 29405

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 28, 2018, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

　　Edward A. Smith (Debtor's Atty) – Email: edward@thebklawoffice.com
　　Elizabeth C. Hehir (Bank of America's Atty) – Email: chehir@mcquirewoods.com

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

| February 28, 2018 | Kyle Krupnick | _(signature)_ |
|---|---|---|
| Date | Type Name | Signature |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECURED CREDITOR SEAGROVE HORIZONTAL PROPERTY REGIME, INC.; DECLARATIONS OF KIM PATE AND ALYSSA B. KLAUSNER, ESQ.